## O. B. WILLIAMS v. RALPH HYBSKMANN and W. A. WILEY, Appellants.

### Division One, December 22, 1925.

1. **PUBLIC IMPROVEMENT: Contract: In Excess of Estimated Cost.** The statute (Sec. 8506, R. S. 1919), relating to cities of the fourth class and declaring that "before the board of aldermen shall make any contract for building bridges, sidewalks, culverts or sewers, . . . an estimate of the cost thereof shall be made by the city engineer or other proper officer and submitted to the board of aldermen, and no contract shall be entered into for any such work or improvement for a price exceeding such estimate," renders illegal, to the amount of the excess, a contract for the construction of a district sewer for an amount in excess of the estimated cost; and "an estimate of the cost" means the entire amount to be taxed against property in the district to pay for the improvement, and not merely the unit prices or separate items of construction, though the unit items may be aggregated and thereby the total estimated cost be ascertained. [Distinguishing Stover v. Springfield, 167 Mo. App. 328, in which the statute there considered did not pertain to a city of the fourth class.]

2. ———: ———: ———: **Cost and Price.** Said statute in saying that the city engineer shall make "an estimate of the cost" of the sewer and no contract shall be entered into "for a price exceeding such estimate" made no distinction between "cost" and "price." The two expressions mean the same thing, and they do not mean that a valid contract can be entered into upon the sole basis of unit prices without reference to the total cost of the improvement. The statute means that a contract for the public improvement cannot legally stipulate for the payment of an amount of money in excess of the total estimated cost.

3. ———: Valid Contract: Invalid Assessment: Excess of Aggregated Units. An ordinance contract for the construction of a sewer in a city of the fourth class is not invalid if the total amount agreed to be paid by it does not exceed the aggregate of the unit prices of construction therein expressed. Nor is it invalid if it does not mention such aggregated sum, but does, by separate items, specify the different kinds and dimensions of construction to be done, and limits the amount to be paid for each to the estimate of the cost thereof made by the engineer; and where such is done and the contract is otherwise valid, tax bills equal to the aggregate of all the unit prices will be valid. But where the ordinance contract specifies the units of construction in different items, and limits the price in each to the engineer's estimated cost, and the contractor constructs a sewer twice as large as the one specified in the item and demands compensation for twice the estimated cost thereof, and that increase, when added to the estimated unit costs, results in a total cost in excess of the aggregate of the total units, tax bills issued to the contractor equal to this excessive aggregated sum are, in the amount of the excess, invalid; but tax bills equal to the aggregate estimated cost of all the items, if the contract is otherwise valid, are not illegal.

4. SEWER: District: Arbitrary: Equity. The establishment of a sewer district is a legislative function, and the discretion of the city council will not be interfered with, unless it affirmatively appears that it has been exercised arbitrarily, fraudulently or oppressively; and it will not be held, in a suit to cancel tax bills issued against private property, that two sewers, established by dividing the city into two districts and taxing the cost of construction against private property therein, were in fact a public sewer and should have been paid for by the entire city, although they run across and drain the whole town and were established primarily to furnish sewerage to the only school houses in the city, one in each district, and on opposite sides of the town, and were connected with existing sewers for an outlet.

5. TWO SEWERS: Separate Ordinances: One Contract. Notwithstanding the construction of the two district sewers was authorized by separate ordinances, with separate plans and specifications for each, and bids for the construction of both were accepted and one contract for both was let, the tax bills will not for those reasons be held to be invalid, in the absence of any showing of fraud, or injustice to the property owner, or that if separate bids had been received the cost of construction would have been less.

6. SEWER CONSTRUCTION: Estimate of Cost: Made by Employee. Since the statute (Sec. 8506, R. S. 1919) declares that an estimate of the cost of construction of a sewer "shall be made by the city

engineer or other proper officer," an estimate made alone by a mere employee, who is not an officer of the city, but a resident of another city, although an engineer, is not the estimate authorized and required by the statute, and a contract entered into by the board of aldermen after his estimate is filed is void, and special tax bills issued to the contractor for doing the work under such contract are invalid and should be canceled in a suit brought by the owner of property against which they have been assessed.

Corpus Juris-Cyc. References: Appeal and Error, 4 C. J., Section 2867, p. 897, n. 81; Section 2868, p. 898, n. 86, 87; Section 2870, p. 900, n. 98 Courts, 15 C. J., Section 518, p. 1092, n. 63. Municipal Corporations, 28 Cyc., p. 955, n. 97 New; p. 956, n. 11 New; p. 1013, n. 31, 32; p. 1037, n. 98; p. 1114, n. 37 New; p. 1122, n. 17, 18; p. 1123, n. 19, 28 New; p. 1134, n. 44; p. 1136, n. 65; p. 1168, n. 73 New. Price, 31 Cyc., p. 1171, n. 24.

Transferred from Kansas City Court of Appeals.

JUDGMENT OF CIRCUIT COURT AFFIRMED.

*R. S. Robertson* and *Clarence S. Palmer* for appellants.

(1) The special tax bills issued by a city for local improvements are prima-facie evidence of their validity. This presumption exists in a suit for the cancellation of the tax bills, as well as in a suit upon the bills. Collins v. A. Jaicks Co., 279 Mo. 404. (2) Under the evidence the sewer in question is a district sewer, and not a public sewer. Its purpose is to serve individual properties. It is not an outlet for other sewers. South Highland Land & Imp. Co. v. Kansas City, 172 Mo. 534; State ex rel. v. Wilder, 217 Mo. 261, 274; Sasse v. Barkwell, 195 S. W. 542. (3) The establishment of sewer districts is entrusted to the board of aldermen and cannot be attacked collaterally. Sec. 8483, R. S. 1919; McGee v. Walsh, 249 Mo. 266, 283; Prior v. Const. Co., 170 Mo. 448; Land & Imp. Co. v. St. Louis, 257 Mo. 291. The mere fact that some lots were already connected with sewers by private connections is no objection to the establishment of a sewer district and the construction of district sewers. Municipal Securities Corp. v. Met. St. Ry. Co., 196 Mo. App. 479; McMurry v. Kansas City, 283 Mo. 493. (4) There is no evidence that the sewer

was not constructed substantially according to plans and specifications. Substantial performance is all that is required. Porter v. Paving Co., 214 Mo. 1. (5) There is no evidence of negligent and careless construction, or of any increase of cost above what was necessary to make a practicable and efficient sewer. (6) There is no evidence that there was any lower bid for the work than the one which was accepted. In the absence of fraud or collusion which is not charged, the act of the board of aldermen in awarding the contract cannot be questioned. Welsh v. Trust Co., 223 S. W. 768; Gibson v. Owens, 115 Mo. 268. (7) The estimate filed with the board of aldermen complied with the statute. The mayor and city clerk were directed, by ordinance, to approve plans, profiles and specifications. They were the proper officers to make and submit on estimate to the board. It was their right, indeed their duty, to get all available information from a civil engineer. Gratz v. Kirkwood, 182 Mo. App. 581; Gratz v. Wyckoff, 165 Mo. App. 196; Gratz v. Kirkwood, 183 S. W. 1071; City of Boonville ex rel. v. Stephens, 238 Mo. 339; Coatsworth Lumber Co. v. Owen, 186 Mo. App. 551; City of Mexico v. Lakenan, 129 Mo. App. 186; City of Independence v. Briggs, 58 Mo. App. 241; Bevier v. Watson, 113 Mo. App. 506; Fayette v. Rich, 122 Mo. App. 145. (8) The contract was not in excess of the estimate of cost. The estimate was a certain price per unit of the various quantities required for the construction of the work. On no item was the bid in excess of the estimate. The mere fact that, when the work was performed, more rock was found than was estimated, has no tendency to invalidate the contract. (a) An estimate is proper whether it is in gross or by unit prices. Frazier v. Rockport, 199 Mo. App. 80; City of Boonville ex rel. v. Stephens, 238 Mo. 339; Coatsworth Lumber Co. v. Owen, 186 Mo. App. 551; City of Independence v. Briggs, 58 Mo. App. 241. (b) Where the estimate is by unit prices, if the actual cost is greater by reason of an increased quantity of some items which could not have been accurately pre-determined, the ad-

ditional amount is properly included in the tax bills. Stover v. Springfield, 167 Mo. App. 335. (c) In case the tax bills are, for any reason, issued for too great an amount, and the amount of the excess can be definitely determined, the owner of the land is not entitled to a cancellation of the tax bills. It is the duty of the court to reduce the bills by the amount of the excess. Ernst v. Springfield, 145 Mo. App. 89; Wills v. Burbank, 182 Mo. App. 69; Welsh v. Trust Co., 223 S. W. 768; Webb City ex rel. v. Aylor, 163 Mo. App. 155.

*W. M. Bowker* for respondent.

(1) In the imposition of public burdens upon private property, the law authorizing the same should be strictly complied with. The proceedings are *in invitum,* and before a property owner's property can be taken the statutes authorizing such an imposition must be followed: City of Kirkwood v. Coleman, 103 Mo. App. 215; Hemann Const. Co. v. Lyons, 277 Mo. 628; City of Brunswick v. Benecke, 233 S. W. 169. (2) Because a city council denominates a sewer a private sewer does not make it one, if, in fact, it is a public sewer. Newcomb v. Kramer, 189 Mo. App. 538; State ex rel. v. Wilder, 217 Mo. 261; Southard v. Mayor of Glasgow, 232 Mo. 108. A sewer does not have to take case of the whole city in order to be a public sewer. Southard v. Mayor of Glasgow, 232 Mo. 108. (3) The city council had no right to compel bidders to bid upon both sewers on one bid. State ex rel. v. Wilder, 217 Mo. 261. (4) If the action of the council in laying out a sewer district is an unreasonable or arbitrary exercise of power, or is fraudulent, it will be void. Newcomb v. Kramer, 189 Mo. App. 538. (5) Before a city of the fourth class can let a contract for a sewer there must be an estimate submitted to the council by the city engineer or other proper officer of the city. Such estimate cannot be made by an outsider, but must be by an officer of the city. Weesner v. Bank, 106 Mo. App. 558; City of Rich Hill v. Donnan,

82 Mo. App. 386; Paving Co. v. O'Brien, 128 Mo. App. 267; Wheeler v. Poplar Bluff, 149 Mo. 36; Gratz v. Kirkwood, 182 Mo. App. 581; Sasse v. Barkwell, 195 S. W. 542. (6)  Under the provisions of Sec. 8506, R. S. 1919, a city of the fourth class cannot let a contract for building a sewer in excess of the estimate.  Gratz v. Kirkwood, 182 Mo. App. 581; Kelly v. Morton, 179 Mo. App. 296; State ex rel. v. Bates, 235 Mo. 262; Hemann v. Const. Co., 277 Mo. 628; Gratz v. Wycoff, 165 Mo. App. 196.   (7) A city must look to its charter for its power to levy a special tax on land, and all doubts as to its authority must be resolved in favor of the taxpayer.  Albers v. St. Louis, 268 Mo. 349.

*N. T. Gentry, amicus curiae.*

(1)  All authorities hold that special assessments, made by municipal authorities in payment for street or city improvements, are proceedings *in invitum;* and therefore to validate tax-bills in payment therefor, the statute must be strictly followed.  Otherwise, the tax-bills are absolutely void.  Guinotte v. Egelhoff, 64 Mo. App. 366; Nevada v. Eddy, 123 Mo. 557; 1 Dillon on Mun. Corp. (3 Ed.) sec. 89; Pepper v. Philadelphia, 114 Pa. St. 112.  (2)  The city had no authority to construct a sewer different from the plans and specifications made by the city engineer.  R. S. 1919, sec. 8506; Maret v. Hough, 185 S. W. 544.  (3)  The city had no authority to let the contract for a sum in excess of the engineer's estimate.  R. S. 1919, sec. 8506; City of De Soto v. Showman, 100 Mo. App. 326; Kelly v. Morton, 179 Mo. App. 299.

ATWOOD. J.—Eldorado Springs, a city of the fourth class, created two sewer districts, numbered 6 and 7, and after authorizing the construction of a district sewer in each, let contracts therefor to appellants, the cost of each sewer to be paid for by special tax bills issued against the property in the respective districts.  The

sewers were built and the tax bills were issued. Plaintiff, who is respondent here, being the owner of two lots in district numbered 7 on which tax bills were issued for the sewer in that district, brought this suit in the circuit court to cancel the bills, and therein prevailed. The Kansas City Court of Appeals affirmed his judgment, but deeming a part of its opinion in conflict with a Springfield Court of Appeals opinion, Stover v. Springfield, 167 Mo. App. 328, 336, the cause was certified here and is now properly before us for all purposes.

I. Plaintiff's petition is in two counts, one for each tax bill, and alleges twelve grounds or reasons for their cancellation. The alleged conflict is in that part of the opinion sustaining plaintiff's eleventh ground, which is pleaded in both counts as follows:

Contract in Excess of Estimated Cost.

"That said tax bill is illegal and void for the reason that the contract for the construction of said sewer and upon which the tax bill herein was issued, was in excess of the estimate on which the board of aldermen acted; that the amount of said estimate was $8,260.75, and the amount of the contract and the tax levied upon said district for the construction of said sewer and upon which the tax bill herein was issued, was $11,527.64."

The question presented by plaintiff's eleventh ground is whether or not the provisions of Section 8506, Revised Statutes 1919, have been complied with, and this in turn calls for a construction of the statute. This law was passed in 1895 (Laws 1895, p. 65, l. c. 85, sec. 91), as a part of a comprehensive act governing cities of the fourth class, and has come down to us without change. It reads as follows:

"Before the board of aldermen shall make any contract for building bridges, sidewalks, culverts or sewers, or for paving, macadamizing, curbing, guttering or grading any street, avenue, alley or other highway, an estimate of the cost thereof shall be made by the city engineer or

other proper officer and submitted to the board of aldermen, and no contract shall be entered into for any such work or improvement for a price exceeding such estimate: Provided, that no such estimate shall be required for making of any local or special repairs.''

Except in the making of local or special repairs two requisites are here enjoined. First, before the board of aldermen shall make any contract contemplated by said statute ''an estimate of the cost thereof shall be made by the city engineer or other proper officer and submitted to the board of aldermen.'' Second, ''no contract shall be entered into for any such work or improvement for a price exceeding such estimate.''

What is contemplated in the ''estimate of cost'' to be filed by the ''city engineer or other proper officer?'' Is it supposed to be an estimate of the total cost of the improvement or merely a list or estimate of ''unit prices'' upon the various items of construction, as appellants contend? BROADDUS, P. J., speaking for the Kansas City Court of Appeals in Probert v. Inv. Co., 155 Mo. App. l. c. 347, has well said: ''The purpose of an estimate is to enable a city acting for the property owners to know how much they are to be taxed for such improvements and also to limit the power of a city within reasonable bounds in the exercise of its power of taxation for such purposes.'' A mere list or estimate of ''unit prices'' or items of construction would neither furnish the desired information to the city nor set any bounds in the exercise of its power of taxation for such improvement. An estimate of the total actual cost of the work is evidently desired and called for by this statute. The estimate must directly furnish this information or data from which it can be derived.

This statute, which is the same as Section 9407, Revised Statutes 1909, was so construed in Frazier v. City of Rockport (a city of the fourth class), 199 Mo. App. l. c. 88: ''Section 9407 [R. S. 1909] provides that an estimate of the cost of the whole work shall be made before any contract shall be let 'and no contract shall be

entered into for any such work or improvement for a price exceeding such estimate.' There is nothing requiring an itemized or detailed estimate, the only requirement being that the board of aldermen shall know in advance what the whole cost is and shall not make a contract in excess of the estimate. If the estimate had been by the unit measure, then even though a total cost were mentioned, reference would have to be made to the plans and specifications to ascertain and verify the true total cost.''

The estimate which was filed with the Board of Aldermen of Eldorado Springs specified the various items and quantities of materials and work to be furnished and done and unit prices therefor, extending in a column to the right the total estimated cost of each item, and then gave the total estimated cost of the sewer in district number seven as $8,260.75. It thus contained the information required by law.

So much for the character of estimate required and filed in this particular case. The second requirement of this statute is that "no contract shall be entered into for any such work or improvement for a price exceeding such estimate." Appellants say that because the word "cost" is here used in connection with the engineer's estimate and the word "price" appears in the clause restricting the contract to such estimate, there is a legislative intent to distinguish the two requirements so that a valid contract can be entered into upon the sole basis of "unit prices" without any reference to or limitation because of the lump or total cost of the improvement which we have just held is a necessary part of the engineer's estimate under this statute, and found to be included in the estimate here filed. We find no such intent. The New Standard Dictionary defines "cost" as "that which has to be given for a thing in order to procure it, especially the price paid." The same authority defines "price" as "the sum actually given for an article; the cost to the buyer." The words are here used reciprocally and refer to the same thing. Obviously

"such estimate" means the engineer's estimate of the total cost previously submitted to the board of aldermen, and no contract can be lawfully let for a price or sum in excess thereof. The plain language of the statute admits of no other interpretation. The ordinance contract here entered into for the construction of the sewer in district number seven provides that appellants are "to do all work necessary to be done in the construction of said sewer district No. seven and to furnish all material for the construction of said sewer and for the sum and price as follows, to-wit:" (here follow "unit prices" relating to nine items of construction, the 9th item reading as follows: "For solid rock excavation in trenches, the sum of fifty cents per lineal foot, per foot in depth, the said price not exceeding the estimate of the cost of work and material heretofore filed with the city clerk by Jas. I. Collins, engineer, as provided by the ordinance aforesaid"). Neither the ordinance contract nor the bid upon which it is based expressly contains the sum total of the cost of the improvement. The contract ordinance, however, does contain the above clause "the said price not exceeding the estimate of the cost of work and material heretofore filed with the city clerk by Jas. I. Collins, engineer, as provided by the ordinance aforesaid." The clause is awkwardly placed, but evidently was intended to modify each item of cost and not Item 9 only which relates solely to the work of rock excavation, because it expressly refers to "the estimate of the cost" of both *work* and *material*. Our above interpretation of the word "price" as the reciprocal of the word "cost" in statutory usage applies with equal force here, and the contract ordinance adopting the language of the statute thus in terms by reference effectually limits the cost of the improvement to the engineer's estimate of the cost of the improvement previously submitted to the board of aldermen. The ordinance contract and the bid containing no express sum total of the cost of the improvement, and having followed the itemized form of the engineer's estimate, appellants are bound by the engineer's

estimated totals on each item and not his sum total of the entire cost, but it cannot be said that the contract was let at a price in excess of the engineer's estimate. True, the tax bills were computed and issued on the engineer's final report to the mayor and board of aldermen which report showed the total completed cost of the sewer to be $11,527.64 instead of $8,260.75 as stated in the engineer's estimate previously submitted to the board of aldermen, but this total cost of $11,527.64 cannot by any means be read into the contract as let. This excess in cost computed grew out of the fact that the engineer's estimate provided for the excavation of 2,000 lineal feet of solid rock two feet deep at fifty cents per foot deep, amounting to $2,000, while the engineer's final report of work actually done showed 11,874.4 feet of solid rock excavated one foot deep at fifty cents a foot, amounting to $5,937.20. The excess over the engineer's estimate of rock excavation was not covered by the contract. The money value thereof is easily computed, and it merely represents work done without authority, for which appellants cannot recover. However, the contract itself is within the engineer's estimate and therefore valid.

While approving the construction placed upon Section 8506, Revised Statutes 1919, by the Kansas City Court of Appeals, we observe no conflict with the opinion of the Springfield Court of Appeals in Stover v. Springfield, 167 Mo. App. 328. The city there dealt with was not of the fourth class, and the particular statute here construed could have had no application. Nor does it appear that a similar statute applied.

II. We proceed to a consideration of plaintiff's other grounds pleaded. His first ground of attack is that the two sewers, although called "district sewers" by the city, are in reality public sewers and should have been paid for by the entire city and not merely by the property owners in the districts. Along with this may be discussed

Public
Sewer.
his second ground which is that the establishment of the sewer districts was illegal, arbitrary and unreasonable. The basis of the first charge is that the two so-called "district sewers" practically ran across and drained the whole town, that the two public school buildings were situated on opposite sides of the town, that the sewers were so located as to run from these buildings respectively, and that this was the principal purpose of the sewers, since the State Board of Health would not allow the school board to maintain the schools if sewer facilities were not provided. It was also urged that it is unfair that the property owners in these two districts should be compelled to pay for sewers which are a public improvement for the benefit of the whole city. The basis of the second complaint is that years ago a system of private sewers had been constructed in a portion of the city, in which plaintiff's properties were located, and afterwards the city had compelled the property owners therein, including plaintiff, to connect with these sewers. The two new district sewers merely connected with these former sewers for an outlet and did not afford the persons in said former district any benefit whatever. It was also urged that many persons in said sewer districts were without water facilites and the sewers could not benefit them, and that while mere benefit alone or the lack of it is · not a determining factor, yet these matters may be taken into consideration in determining whether or not the action of the city was arbitrary or unreasonable. With reference to this second ground, it may be said that the establishment of the private sewers, before the city saw fit to proceed under the statute, only showed the necessity for sewers, and the fact that sewers were thus established by individual action should not hamper the city in its power to establish sewers for all persons in that portion of the city. As for certain parts of the districts not having water facilities, the fact that there was no sewerage may be the reason for such lack, and if that be a valid reason, then the oppor-

tunity for obtaining these advantages would be forever forbidden by these objections moving in an endless chain. It does not appear that the property in the territory already possessed of sewer advantages could have been made into a separate district of its own and the other districts created outside of it. The construction of the private sewers could not interfere with or hamper the city in the exercise of its power. [Municipal Sec. Corp. v. Met. St. Ry., 196 Mo. App. 518.] With reference to both of these objections, it may be observed that the burden is on plaintiff to establish the invalidity of the tax bills. They are prima facie presumed to be valid, and this is so as well in an equity suit to cancel them as in any other. [Collins v. Jaicks Co., 279 Mo. 404.] The establishment of sewer districts is a function entrusted by the statute to the board of alderman, the legislative body of the city, and cannot be collaterally attacked. [McGhee v. Walsh, 249 Mo. 283; Prior v. Buehler Const. Co., 170 Mo. 448.] Unquestionably, in the absence of evidence of fraud or proof that the action of the city is manifestly arbitrary or unreasonable, or that the assessment is palpably unjust or oppressive, the tax bills should not be invalidated on such grounds. [Jennings Imp. Co. v. St. Louis, 257 Mo. 291.] The evidence does not manifestly disclose that these are public sewers. They afford sewer facilities, it is true, to the public school buildings, but that fact of itself does not convert it into a public sewer. They serve the tracts within the districts, and there is no evidence that the public and not the individual is served. [State ex rel. v. Wilder, 217 Mo. 274.] The outlets of these sewers are into the sewer previously built, and do not form a public outlet for the town. The fact that they happen to drain a large portion of the city does not change them into public sewers. [Sasse v. Barkwell, 195 S. W. 542.] The discretion vested in the city legislative authorities should not be interfered with by the courts, unless it is "affirmatively shown to have been exercised arbitrarily, fraudulently or oppressively." [McMurry v. Kansas City, 283 Mo. 493-4.]

Plaintiff's third and fourth grounds are that the work was negligently and carelessly done and not done according to specifications. They are not supported by the evidence and are here eliminated. The seventh, eighth, tenth and twelfth grounds are passed over for the same reason, or because they are mere statements of other grounds.

The fifth ground of complaint is that the work was authorized by separate ordinances with separate plans and specifications for each sewer, but the city accepted bids for the construction of both sewers and not separate bids for each, and let one contract upon one bid for both. The only evidence on this matter appears on the city records, wherein it is recited that before the bids were opened, one of the bidders stated that "he desired his bids on the two sewers 6 and 7 to be taken as a whole, and that no bid be taken and accepted for one sewer alone, but that both contracts be let to the same bidder. This condition was agreed to by all bidders and by the board." It further appeared that one of the bidders had no bid on one of the items, which was in direct violation of the terms under which the bids were submitted. Hence the entire bid was discarded or not considered. The record then recites that the defendants were found to be the lowest and best bidders, and their bid was accepted. It does not appear what the rejected bid was, it not being offered in evidence. There was no evidence of any lower bid being offered, or that by receiving the bids separately on each sewer the price would have been less. No fraud was shown, and no harm came to any property owner in either district. In the absence of any evidence showing injustice we do not feel that the tax bills should be invalidated upon this ground. [Gibson v. Owens, 115 Mo. 268; Welsh v. Commerce Trust Co., 223 S. W. 768.]

The sixth ground of complaint is that the tax bills were void because the work was not completed within the time provided. The court, however, gave the declaration requested by defendants, stating that "the court

*Bids and Contract for Both.*

Timely
Completion.
finds as a fact from the evidence that the sewer in question was completed in the time provided by the contract." While this is an equity case and we may examine the record and determine the fact for ourselves, yet due deference should be paid the chancellor's findings owing to his superior advantage in observing the witnesses, and we are not disposed to disagree with him on his finding in this regard.

III. The only ground that remains to be considered is plaintiff's ninth objection embraced in his allegation that said tax bills are null and void for the reason that

Estimate
Made by
Employee.
at the time said contract was let to the defendants there had been no estimate of the cost of the same submitted to the board of aldermen of said city by the city engineer or other proper officer in accordance with the provisions of Section 9407, Revised Statutes 1909.

Section 9407, Revised Statutes 1909 (now Sec. 8506, R. S. 1919), requires that the estimate (sometimes referred to as the preliminary estimate) of the cost of the proposed improvement "shall be made by the city engineer or other proper officer and submitted to the board of aldermen." The statutory language is clear and positive. This estimate must be made by the city engineer or other proper officer. The duty cannot be delegated (Rich Hill v. Donnan, 82 Mo. App. l. c. 388), though the city officer designated by the board of aldermen to make the estimate may avail himself of skilled assistance, provided he give the matter such attention that the estimate may properly be said to reflect his own judgment and be submitted as his own. [Gratz v. Kirkwood, 182 Mo. App. l. c. 589.] This statute was before BROADDUS, P. J., when he said in Fayette (a city of the fourth class) v. Rich, 122 Mo. App. l. c. 152:

"If the city had an engineer, the statute did not in terms impose the duty on him of making an estimate of the cost of the sidewalk. Section 5895 provides that such estimates may be made by the city engineer or other proper officer. It is left to the council to say what offi-

cer shall make estimates of the cost of city improvements. Whoever that body selects, he, being an officer of the city, will be presumed to be qualified for the duty.''

Under Section 8411, Revised Statutes 1919, the mayor may appoint a city engineer if authorized by ordinance to appoint such officer. Section 8420, Revised Statutes 1919, provides that all officers elected or appointed to office under the city government shall be qualified voters under the laws and Constitution of this State and the ordinances of the city, and no person shall be elected or appointed to any office who is not a resident of the city. Under Section 8421, Revised Statutes 1919, every officer of the city before entering upon the duties of his office shall take and subscribe the oath of office, which shall be filed with the city clerk, and failing to do so his office shall be deemed vacant.

The estimate required by the above statute was made by James I. Collins, engineer, and filed with the city clerk June 1, 1920. There is no evidence, nor is it claimed that he was ever appointed city engineer of Eldorado Springs. Nor is there any evidence that he was an officer of the city. The evidence in fact precludes such a possibility. Being a resident of the city of Sedalia disqualified him for holding any city office in Eldorado Springs. There is in evidence the record of a meeting of the board of aldermen on May 4, 1920, whereat was ordered ''the drawing of contract to put in writing proposal to employ Jas. I. Collins, of Sedalia, Missouri, as engineer for all engineering services in plans and constructions of sewers.'' Pursuant thereto a written contract was entered into May 6, 1920, between the city of Eldorado Springs, party of the first part, and James I. Collins, engineer, of Sedalia, party of the second part, whereby for a consideration therein expressed, Collins was employed by said city to make complete plans, profiles and specifications for the construction of sewers in sewer districts 6 and 7, and to make complete itemized estimate of the cost of the work. This contract was filed with the city clerk May 18, 1920, approved by the city, and clearly

fixed his status as an employee of the city and not a city officer, even *de facto.* [29 Cyc. 1366.] On June 1, 1920, Collins filed the estimates contemplated by this contract and upon these estimates bids were received and the contracts for the construction of the sewers in districts 6 and 7 entered into. The evidence does not show that the board of aldermen ever at any time designated or directed any city officer to make these estimates, and for aught the record shows no city officer ever saw or had a thing to do with these estimates before Collins filed and submitted them to the board of aldermen on June 1, 1920. On this date an ordinance was passed "authorizing and instructing the mayor and city clerk to approve the plans, profiles and specifications for District Sewer No. 7, as prepared and submitted by Jas 1. Collins, Engineer, of Sedalia, Missouri." It will be noted that this ordinance does not refer to the estimate of cost which he filed and submitted to the board of aldermen on the same date, nor did the council at any time previous to letting the contract direct any officer with reference thereto. The fact that the mayor and city clerk questioned Collins about the estimate, along with his plans, profiles and specifications, after he had made and submitted the estimate, does not alter the situation. The board of aldermen ignored a plain and vital requirement of the law when it failed to have an estimate of the cost of the proposed improvement made by the "city engineer or other proper officer," and the tax bills thereafter issued are invalid. The trial court did not indicate upon what ground or grounds the tax bills were annulled, but we have reached the same conclusion and the judgment of the circuit court is affirmed. *Ragland, P.J.,* and *Graves, J.,* concur; *Woodson, J.,* absent.