JOSEPH POPE, Appellant, v. FRANCIS RICH et al., Appellants.—293 S. W. 373.

Division One, April 11, 1927.

1. **STREET IMPROVEMENT: Unit Prices.** It is not enough that the contract for a street improvement fix only prices per unit and that such unit prices do not exceed the city engineer's estimates; but the contract is obnoxious to the statute (Sec. 8324, R. S. 1919) if it fails to furnish the total actual cost of the work, and no contract can be lawfully let for a price in excess of the engineer's estimate of the total cost.

2. ———: ———: **Quantities: Open Contract.** A contract for a street improvement is not an open one as to quantities which specifies only unit prices, but on its face incorporates as a part and parcel of it "the plans and specifications and estimate of cost for such work on file in the office of the city clerk," and those plans and specifications and estimate of cost set out definitely and with precision the quantities both of work and material required for a completion of the improvement, and the unit prices for each, and the total estimated cost; and where such are the facts, the contractor cannot lawfully claim payment for quantities in excess of the engineer's estimate, or at rates in excess of his unit prices; and particularly so, where the contract contains no provision for readjustment according to measurements upon final completion of the work.

3. ———: **Borrowed Earth: Additional Pay: Open Contract.** A provision in the contract for a street improvement that "borrowed earth shall be paid for by the street if there be any charge" meant that the contractor was to receive in addition to the total amount for which he agreed to do the work whatever he was required to expend for borrowed earth up to the total cost of the city engineer's estimate, but in no event could the total cost exceed that estimate. The statute is a part of the contract and must be read into it, and it provides that no contract shall be made for a price exceeding the engineer's estimate.

4. ———: **Overcharge: Correction.** The contractor cannot recover on a tax bill based on the total cost of the improvement as shown by the city engineer's final report, where the report shows an excess over the contract price for work not provided for in the contract; but where the excess of the cost over the contract price was brought about solely by an overhaul of earth not provided for by the contract, the court, under the statute (Sec. 8323, R. S. 1919), may deduct from the amount of the tax bill a proportionate part of the unauthorized charge for the overhaul, and give judgment for the remainder.

5. ——: **Ordinance: Levying Cost: Tax Bill: Valid Lien.** It is immaterial whether an ordinance levying and assessing the cost of a street improvement, passed following the final report of the city engineer to the city council upon the completion of the work, was enacted in accordance with the procedure prescribed by the statute, for the reason that such ordinance is not a prerequisite to the issuance of a valid tax bill. Where the report as to form and content meets all the requirements of the statute (Sec. 8323, R. S. 1919), a tax bill, reciting that the city council by resolution accepted the work and approved the engineer's report, and that thereafter the city clerk issued tax bills in accordance with said report, meets all the requirements of said statute, and by force thereof becomes a lien upon the land described therein.

Corpus Juris-Cyc. References: **Municipal Corporations**, 28 Cyc., p. 1013, n. 31; p. 1037, n. 1; p. 1169, n. 79; p. 1198, n. 46 New.

Transferred from Kansas City Court of Appeals.

AFFIRMED.

*Ira H. Lohman* for plaintiff.

(1) While it is true that Sec. 8324, R. S. 1919, limits the city council to the amount of the estimate in entering into a contract, yet the statute in no wise prevents the contractor from receiving pay if the estimate of quantities on final completion of the work is greater than the estimated quantity. There is nothing in the contract that exceeds the estimate of the city engineer. The contract is let on the per unit basis, and the price per unit is the same and below the estimate of the city engineer. If the quantities on final completion had turned out to be the same or below the estimate, the contract would clearly be under the estimate. Simply because, on final completion, the estimated quantities were exceeded does not render the contract void. The contract is, nevertheless, a valid contract. Sec. 8324, R. S. 1919; Gratz v. Kirkwood, 182 Mo. App. 594; Kelly v. Morton, 179 Mo. App. 296; Lumber Co. v. Owen, 186 Mo. App. 551; Boonville ex rel. v. Stephens, 238 Mo. 339, 355. The section of the statute requires only an estimate of the cost. There is nothing in the statute that would require an estimate of the quantities. Whatever the quantities may be is a matter of calculation. What the city council is concerned about is the cost per unit, and a contract let at a price per unit is certainly a valid contract. Boonville ex rel. v. Stephens, 238 Mo. 355; Stover v. Springfield, 167 Mo. App. 336. (2) The case of Williams v. Hybskmann, 247 S. W. 203, is directly in conflict with Stover v. City of Springfield, 167 Mo. App. 328, Boonville v. Stephens, 238 Mo. 339, and Gratz v. Kirkwood, 182 Mo. App. 594, and cannot be an authority in this State; but granted that it is authority, the trial court in this

case had the right and privilege to correct the amount of the tax bill and limit it to the quantities in the estimate. Sec. 8323, R. S. 1919; Murphy v. Welton, 217 S. W. 620; City of St. Joseph v. Dillion, 61 Mo. App. 321; Laws 1911, p. 339; Neil v. Ridge, 220 Mo. 233; Hydraulic Press Brick Co. v. Nickell, 221 S. W. 817. It is contended by defendants that there was a change in the city ordinance, levying the assessment against the property. This matter was not called to the attention of the trial court in defendants' motion for a new trial, and is not before this court for review. However, every tax bill is "*prima facie* evidence of the validity of the bill and of the doing of the work and of the furnishing of the material charged for, and of the liability of the land to the charge stated in the bill."

*D. W. Peters* and *F. E. Luckett* for defendants.

(1) The city of the third class, could not enter into a contract providing for the improvement of the street on which the property of defendants abutted, for a price in excess of the estimate made by the city engineer. Sec. 8324, R. S. 1919. Both the estimate and the bid in this case were specific and definite as to the quantities, prices per unit, and the total amount which the proposed work was to cost, but the contract is silent on everything except the price per unit which was to be paid to the contractor for the work done. Williams v. Hybskmann, 247 S. W. 208; Gratz v. Kirkwood, 182 Mo. 593; Boonville v. Rogers, 125 Mo. 149. (2) The ordinance authorizing the issuance of the tax-bill sued on, is invalid and the tax-bill of necessity is without force or effect. This ordinance was typewritten and introduced in the city council on February 7, 1923. It was read in full the first time, and by its title the second time, on this date; being put on final passage at this meeting and it was laid over; it was laid over at the March meeting; then one the 7th day of April, 1923, it was read the third time by its title and adopted. This is the record upon the original ordinance. (a) The total cost of the improvement, as shown by the original figures in this ordinance, was $5461.67. This was the sum stated by the engineer in his report submitted on January 31, 1916. On March 16, 1916, the engineer submitted his final report showing the total cost of the improvement was $5553.53. This ordinance as finally adopted on April 7, 1916, shows that the original figures had been crossed out with a pen and red ink, and that the amount stated by the engineer in his final report on March 16, 1916, had been written therein instead with pen and red ink. The same method was used to alter and change the amount of the tax-bill to be levied against defendants herein. These alterations made the ordinance a new and different one, and after they were made, it should have been treated as a new and original ordinance. The record shows

that this was not done.   (b)   "No ordinance shall be passed except by bill, and no bill shall become an ordinance unless on its final passage a majority of the members elected to the Council shall vote therefor . . . and all bills shall be read three times before their passage." Sec. 8287, R. S. 1919.   This provision of the statute is mandatory and failure to comply therewith renders the ordinance void.   (3)   The vice in the tax-bill sued upon is not such as can be cured by any action of the court.   There was no error in the amount of the tax-bill.   The entire record shows a deliberate attempt upon the part of the contractors, the engineer, and the council to evade the plain provisions of the law as recited in Sec. 8342, R. S. 1919.   The other condition does not obtain in this case.   For this reason the trial court should have held the tax-bill sued upon, invalid in its entirety.   See Sec. 8323, R. S. 1919.

RAGLAND, J.—This case comes to the writer for opinion on reassignment.   It is a suit to enforce the lien of a special tax bill for a street improvement.   In the trial court plaintiff was awarded judgment for a less sum than that called for by the tax bill; both parties appealed.   The Kansas City Court of Appeals, where the appeals were lodged, deeming the conclusions reached by it to be in conflict with Stover v. City of Springfield, 167 Mo. App. 328, certified the cause to this court.

The tax bill was issued by the City of Jefferson April 10, 1916.   It recited among other things: that it was issued for work done and material furnished by plaintiff, as contractor, in grading, curbing, guttering and asphalt macadamizing that portion of Marshall Street which lies between Main and Water Streets in said city; that the total cost of such improvement was $5,553.53; that the aggregate number of front feet contained in the aggregate lots or pieces of ground abutting said improved street was 795 lineal feet; that the lot owned by defendant had an aggregate frontage of 198 feet and 9 inches; and that the proportionate part of the total cost of the improvement levied and assessed against said lot was $1,388.48.

The city engineer's estimate of the total cost of the improvement according to specified unit prices was $3,978.15.   The plaintiff's proposal or bid for the work on the basis of unit prices aggregated $3,799.50.   The total cost of the work when completed, according to the unit prices designated in the proposal, was $5,553.53, and that amount was made the basis of the tax bill.   The circuit court gave plaintiff judgment for the amount of his bid, with interest.   As the principal question arising on the record is whether the contract for the improvement was made for a price exceeding the engineer's estimate, a statement in detail with respect to the estimate, the proposal and the contract is necessary.

The engineer's estimate was as follows:

| | | |
|---|---|---|
| 1200 Cu. Yds. Earth Excavation | at $0.35 | 420.00 |
| 3000 Cu. Yds. Earth Excavation borrow | at $0.35 | 1050.00 |
| 3000 Overhaul 3000 yds. 2000 feet | at $0.015 | 900.00 |
| 955 Sq. Yds. Asphalt Macadam | at $0.93 | 888.15 |
| 900 Lin. Feet Curb | at $0.40 | 360.00 |
| 900 Lin. Feet Gutter | at $0.40 | 360.00 |
| | | $3978.15 |

The proposal was "to furnish all appliances, materials and labor, and do all the work necessary for the improvement of—Marshall—Street between—Main—Street and Water—Street, in accordance with the plans, specifications and ordinances for said work," for the following prices to-wit:

| Quantity    Classification | Price | Amount |
|---|---|---|
| 1200 Cu. Yds. Earth Excavation | at $0.35 | 420.00 |
| 3000 Cu. Yds. Earth Excavation borrow | at $0.35 | 1050.00 |
| 3000 Cu. Yds. Earth overhaul 2000 overhaul—per cu. yd. hauled 100 feet | at $0.01¼ | 750.00 |
| 955 Sq. Yds. Asphalt Macadam | at $0.90 | 859.50 |
| 900 Lin. Feet Curb | at $0.40 | 360.00 |
| 900 Lin. Feet Gutter | at $0.40 | 360.00 |
| Borrowed earth shall be paid for by the Street if there should be any charges | | |
| Total | | $3799.50 |

The contract, omitting formal recitals, provided as follows:

"Now therefore, for and in consideration of the awarding of this contract, and work thereunder by said first party hereto, the City of Jefferson, to the second party, said Joseph Pope—he does hereby contract and agree to do and perform said work, above specified and referred to for the following prices and to accept in payment therefor, special tax-bills to be issued by the said City of Jefferson, against the abutting real estate, upon the acceptance of said work by the Council of the City of Jefferson:

Earth excavation per cubic yard x35 cents.
Earth excavation per cubic yard borrow x35 cents.
Cub. yd. earth overhaul 100 feet per cub. yd. x01¼ cents.
Asphalt macadam per square yard x90 cents.
Curb per foot                    x40 cents.
Gutter per foot                  x40 cents.
Borrowed earth shall be paid for by the street if there be any charge.

"Now, by these presents it is agreed to and understood by the parties hereto, that this contract is entered into subject to all existing ordinances of the city, and charter thereof, pertaining to the work

awarded and subject to the plans and specifications and estimate of cost for such work on file in the office of the city clerk, and which shall be considered a part and parcel of this contract.''

The excess of the actual cost of the work over the estimate is explained by the following note appended to the city engineer's report:

''Note: The earth as shown in the estimate was not available when the street was constructed, and the earth entering into the cost was necessarily hauled from a long distance practically entirely. . . .

''The contract provided for a certain price on each item, and as the quantity of material used was above the estimate, and as it was necessary to haul the earth a considerably longer distance than was provided in the estimate owing to the fact that the earth shown in the estimate was not available when the street was constructed, thereby increasing the length of the haul, the cost of the work was considerable increased.''

I. The City of Jefferson is a city of the third class. Section 8324, Revised Statutes 1919, relating to the power of cities of that class to improve streets and the method of paying the cost of such improve-

**Open Contract.** ments, provides: ''But before the city shall make any contract for any of said improvements, excepting repairs, an estimate of the cost thereof shall be made by the city engineer. . . . Such estimate shall be filed with the city clerk and no contract shall be made for a price exceeding such estimate.'' It is plaintiff's position that his contract with the city was an open one so far as quantities were concerned; that only the prices per unit were fixed; and that, as such prices did not in any respect exceed the estimates, the contract was not obnoxious to the statutory provision just quoted. This latter proposition has been ruled adversely to plaintiff's contention. In the recent case of Williams v. Hybskmann, 278 S. W. 377, this court had occasion to construe Section 8506, Revised Statutes 1919, found in the article relating to the government of cities of the fourth class. The language of that section is almost identical with that of the part of Section 8324 above quoted. In construing it we held:

'' 'The purpose of an estimate is to enable a city acting for the property owners to know how much they are to be taxed for such improvements, and also to limit the power of a city within reasonable bounds in the exercise of its power of taxation for such purposes.' [Quoting from Probert v. Investment Co., 155 Mo. App. 344, l. c. 347.]

''A mere list or estimate of 'unit prices' or items of construction would neither furnish the desired information to the city nor set any bounds in the exercise of its power of taxation for such improvement. An estimate of the total actual cost of the work is evidently desired

and called for by this statute. The estimate must directly furnish this information or data from which it can be derived. . . .

"Obviously 'such estimate' means the engineer's estimate of the total cost previously submitted to the board of aldermen, and no contract can be lawfully let for a price or sum in excess thereof. The plain language of the statute admits of no other interpretation."

And so we say with respect to the statute applicable here.

2. Nor do we agree with the contention that the contract was an open one as to quantities. It is true that it specified only unit prices, but on its face it incorporated as a part and parcel of it "the plans and **Quantities.** specifications and estimate of cost for such work on file in the office of the city clerk." Those plans and specifications and estimate of cost set out definitely and with precision the quantities both of work and material which were required for the contemplated improvement. In addition to that fact the contract contained nowhere any provision for readjustments according to measurements upon final completion of the work. As the exact quantities in units were prescribed and the prices per unit specified, the contract thereby disclosed the specific lump sum for which plaintiff undertook to make the improvement, namely, $3,799.50.

The only open clause in the contract was this: "Borrowed earth shall be paid for by the street if there be any charge." It was evidently within the contemplation of the parties that the contractor **Excess of** should receive in addition to the $3,799.50 whatever he was **Estimate.** required to expend for borrowed earth. But there was a limitation on this. This additional amount could not in any event carry the total cost of the improvement beyond the engineer's estimate. According to general law, the statutory provision heretofore quoted must be read into the contract. The instrument itself, however, recited that it was made subject to the city's charter, and the statute was a part of that charter. The contract cannot be construed, therefore, as providing for the payment in any contingency of a total cost in excess of the engineer's report.

II. 1. The tax bill was based on the total cost of the improvement as shown by the engineer's final report, namely, $5,553.53; whereas, the contract price was $3,799.50. Defendants insist that the correction of this obvious vice in the tax bill was not au-**Deducting** thorized by Section 8323, Revised Statutes 1919, which **Over Charge.** provides that "in any action brought on any such tax bill the court shall have power to correct any error in the amount . . ." As disclosed by the report the excess of the cost over the contract price was brought about solely by an overhaul of earth not provided for in the contract. As the extra overhaul was not covered

by the contract plaintiff can not recover therefor. [Williams v. Hybskmann, supra, l. c. 380.] The circuit court therefore properly deducted from the amount of the tax bill a proportionate part (one-fourth) of the unauthorized charge for overhaul of earth and gave judgment for the remainder.

2. Following the final report of the city engineer to the city council, upon the completion of the improvement, an ordinance was passed levying and assessing the cost thereof against the abutting lots. Defendants say that that ordinance was void, because not enacted in accordance with the procedure prescribed by statute (Sec. 8387, R. S. 1919). Whether it was or not we need not determine, for the reason that the passage of an ordinance was not a pre-requisite to the issuance of a valid tax bill. On March 16, 1916, upon the completion of the improvement, the city engineer filed his report. The report as to form and content met all the requirements of said Section 8323. On April 7, 1916, according to a recital in the tax bill, the city council by resolution accepted the work and approved the engineer's report. Thereafter the city clerk, as provided by said section, issued tax bills in accordance with the engineer's report. The section last mentioned further provides that "every special tax bill shall be a lien against the land described therein for five years after its date . . . ." So that the tax bills issued by the clerk, including the one in suit, became liens respectively against the lands described in them, by force of the statute, and without the aid of an ordinance.

The judgment of the circuit court is affirmed. All concur, except *Gantt, J.,* not sitting.