STATE OF MISSOURI at the relation of MELROSE SEWER DISTRICT, an Incorporated Sewer District, and ELLIS G. HANSON, SIDNEY E. CUNIO and MARTIN P. MOORE, Trustees of the MELROSE SEWER DISTRICT, Relator, v. FORREST SMITH, State Auditor.—120 S. W. (2d) 1102.

Court en Banc, October 26, 1938.

*Adrian L. Bushman* and *Fred E. Mueller* for relator.

*Roy McKittrick,* Attorney General, *Covell R. Hewitt* and *Olliver W. Nolen,* Assistant Attorneys General, for respondent; *John L. Graves* of counsel.

210

DOUGLAS, J.—The Melrose Sewer District, an incorporated sewer district in St. Louis County, authorized an issue of $123,000 of bonds, the proceeds to be used to build sewers. It presented the bonds to the State Auditor for registration as required by law. Upon his refusal to register them, the district brings this mandamus action to compel him to do so.

The district was organized under the Act of the Legislature (Laws 1933-34, p. 119, Extra Session), providing for the establishment of sewer districts in counties of 150,000 to 400,000 inhabitants, which is applicable to St. Louis County. Proceeding under the act, a petition for incorporation was filed in the circuit court of that county. The court appointed a competent sanitary engineer to lay out and define the boundaries of the proposed district and to report his findings on the subjects prescribed in the act.

Due notice was given of the filing of the petition and the report and of the day set for the hearing before the court. At the hearing, the testimony of the engineer who had prepared the report disclosed that an item of cost of $3,000 for various expenses had been omitted from his report and that the estimate shown therein should be increased by that sum so that the amount of total estimated cost would read $258,000 instead of $255,000. Thereafter, the court rendered its decree finding that the construction of the sewers described in the report at a cost of $258,000 was necessary for the preservation of public health and welfare and would be of public utility and benefit. It decreed that the district be incorporated and ordered an election for incurring the indebtedness.

The respondent bases his refusal to register the bonds on two grounds. The first is that the order for the election was void for the reason that the decree of incorporation of the district was invalid because of the action of the court in permitting the amount of the engineer's estimate to be increased over the amount originally stated in his report. Respondent claims that the court is bound by the

report as it is filed and must either accept or reject it; that it has no power to increase, decrease, change or modify the estimate.

The act is silent on this subject. It provides only that if the court finds that the proposed improvements are necessary for the preservation of public health, then it shall find in favor of the petitioners. Or, if it finds against the improvements, then it shall dismiss the petition, and this is all that is held on this point in the case of State ex rel. Webster Groves Sanitary District v. Smith, 337 Mo. 855, 87 S. W. (2d) 147. However, the act does provide that exceptions might be filed ''to all or any part'' of the report. These exceptions must be heard and determined. Therefore, it must have been contemplated that all matters required to be contained in the report would be subject to the consideration of the court. We find no reason why the form in which the report is originally submitted should be so sacred as to deprive the court of its discretion in permitting it to be corrected or amended. We believe that the same rule, together with its limitations, which applies to the amendments of pleadings may be properly followed here. Furthermore, it must be borne in mind that the procedure under the act provides two distinct steps in order to obtain the improvements desired. The petition, together with the report, the hearing by the court and its decree, are for the purpose only of creating the district into a body corporate. After this has been done the inhabitants of the district by their vote must pass on the proposition of creating the indebtedness and thereby have in themselves the power of approval or disapproval of the amount of the proposed expenditure. The decree of the court and order of election were valid and proper.

The second ground advanced by respondent for refusing to register the bonds is that the amount of the proposed indebtedness submitted to the vote of the inhabitants of the district was greater than the estimate stated in the engineer's report contrary to the provisions of the act. However, we find that such amount was less than the estimate.

The engineer expressed the belief in his report that government aid might be obtained by the district in building the sewers by way of a Works Progress Administration grant in the amount of $135,000. The report then continued with the recommendation that the balance, or $120,000, be raised by the district by voting bonds. Upon his testimony that an additional sum of $3,000 must be added to the estimated cost of the project because of his omission of an item from the estimate and that the amount to be raised by voting bonds be increased to $123,000, the court ordered the election for said amount. The election was held and the proposition in that amount was approved. Respondent claims that as the cost to the people of the district set out in the engineer's report was first estimated and reported to be $120,000, the court had no authority to order the sub-

mission of a larger amount. In support of this contention respondent relies on Williams v. Hybskmann, 311 Mo. 332, 278 S. W. 377. This was an action on special tax bills issued by a sewer district which were attacked on the ground that the amount of the contract for the construction of the sewers was in excess of the estimate of cost on which the board of aldermen acted. He also cites Pope v. Rich, 316 Mo. 1206, 293 S. W. (2d) 333, a case involving similar facts, which quotes with approval Probert v. Investment Co., 155 Mo. App. 344, 137 S. W. 41, that no contract can be lawfully let for a price in excess of the engineer's estimate of cost submitted to the board of aldermen. These cases are not persuasive here. The controlling figure under the act is the *cost of constructing the system of sewers* and not the suggested cost to the people or the amount merely recommended by the engineer to be raised by a bond issue. The clause of the act which covers creating the indebtedness is in Section 5, and reads: "In the order of such election the Court shall also provide for submitting at such election a proposition to incur indebtedness by the District *in an amount not greater than the estimate of the cost of constructing a system of sewers as provided in the report of the engineer.*" (Italics ours.) The amount submitted in the election, namely $123,000, is far less than either the amount of the estimate originally stated in the engineer's report or the corrected amount. Surely the suggestion, or recommendation, of the engineer as to what part of the estimated cost might be raised by a bond issue is in no way binding on the court of the district.

There is no prohibition in the act against the approval of a project by the court, the cost of which is beyond the constitutional limit of indebtedness of the district. The district of course cannot incur indebtedness exceeding such limitation. The act presupposes that outside aid may be forthcoming, as under Section 4 it gives the district the power of "holding such real and personal property as may be at any time either *donated to* or acquired by it." (Our emphasis.) The only limitation the act prescribes as to incurring indebtedness is the estimated cost of the entire improvements and not the proposed cost to the inhabitants. This contention therefore, must also be ruled against respondent.

For these reasons, our peremptory writ of mandamus should issue. It is so ordered. All concur.