## WEST, ET AL. v. SCHOOL DIST. No. 9, PLATTE COUNTY, ET AL.*

(No. 1454; Aug. 16, 1927; 258 Pac. 583.)

SCHOOLS AND SCHOOL DISTRICTS—ARE SUBDIVISIONS OF COUNTY—
CONSTITUTIONAL LAW—QUALIFICATIONS OF ELECTORS—STATUTES.

1. School districts *held* to be "subdivisions of county" within meaning of Const. art. 16, § 4, providing that no debt in excess of taxes for current year shall be created by any county or subdivision thereof unless proposition to create debt shall have been submitted to vote of people.

2. Laws 1925, c. 35, providing that electors voting on special school tax appropriations and bonding of school districts must be taxpayers on real property in such school district, *held* unconstitutional as prescribing different qualifications for electors entitled under Const. art. 16, § 4, to vote from those mentioned in article 6, § 2.

*See Headnotes: (1) 35 Cyc. p. 973 n. 7; p. 974 n. 19; p. 975 n. 21; (2) 35 Cyc. p. 975 n. 21; p. 1012 n. 97.

RESERVED QUESTIONS from District Court, Platte County; WILLIAM A. RINER, Judge.

Action by W. R. West and others against School District No. 9 in County of Platte and others for declaratory judgment. On reserved questions from district court.

*Dillon, Ellery & Spencer,* for plaintiffs.

The term "any election" as used in the provisions of the Constitution material to this controversy was not intended to apply to school district meetings. Sections 2239, 2240 and 2243 C. S. relating to school district meetings are substantially the same as the original Act passed in 1876. The sections have been cited or construed in School Dist. v. Tube Co., 5 Wyo. 185, and Baldwin v. Nickerson, 3 Wyo. 208. In Parker v. School Dist. 17 Wyo. 535 it was held that the general election laws of the state with reference to opening and closing the polls did not apply to school elections: Words & Phrases Vol. 2 p. 95; Bouvier p. 2186. See also Words & Phrases Vol. 3 p. 2330. The nature of school elections is also defined in Miller v. School Dist. 5 Wyo. 217. School district meetings are not referred to in Article VI, Sec. 2 of the Constitution. Section 2244 C. S., as amended by Chapter 35 L. 1925 is not in conflict with Article VII, Sec. 1 of the Constitution. The question here is not governed by the case of Simpkins v. Rock Springs, et al., 33 Wyo. 166. The provisions of the Michigan Constitution are similar to ours and it has been held in that state that the qualifications of school electors are not identical with those of an elector under the Constitution; Bells v. Burr, 43 N. W. 24; Burton v. Lindsay, 151 N. W. 48; Gaddis v. District, 139 N. W. 280. Where the Constitution gives the legislature power to establish and maintain a public school system, the general rule is that it may likewise prescribe the qualifications of voters at school district meetings, 35 Cyc. 875; McKinnon v. District (Ore.) 241 Pac. 386; In Re Gage (N. Y.) 25 L. R. A. 71; People v. English (Ill.) 15 L. R. A. 131; Wheeler v. Brady, 15 Kan. 27; State v. Cones, 15 Nebr. 444. A school district is not a subdivision of the county within the meaning of Article XVI, Sec. 4, and Section 2244 is not in conflict with Sections 2 or 4 of Article XVI of the Constitution; Baldwin

v. Nickerson, 3 Wyo. 208; State v. City (Okla.) 224 Pac. 347; MacQueen v. City (Mich.) 160 N. W. 627; Teeple v. State (Ind.) 86 N. E. 49; City v. Comm. (Ky.) 121 S. W. 411; Kline v. Martin (Oh.) 115 N. E. 37; Board v. State (Okla.) 109 Pac. 563; State v. McGraw (Mont.) 240 Pac. 812; Scown v. Czarnecki (Ill.) 106 N. E. 276; School Dist. v. Town (Vt.) 66 Atl. 1033; School Dist. v. Longden (Cal.) 83 Pac. 246; People v. Township (Mich.) 182 N. W. 118; Herman v. Board (N. Y.) 137 N. E. 24. This court declined to decide the question in Miller v. School District supra for the reason that it arose as an abstract question there. Sec. 2244 C. S. as amended by Ch. 35 L. 1925 is not in conflict with the Constitution relating to taxation, Article I, Sec. 28. A school district is a state agency provided for a specific purpose by the legislature under authority of the Constitution, State v. Council (Wis.) 71 N. W. 86; Town v. Jenkins 57 N. Y. 177; Curtis v. County, 16 L. Ed. 745. Section 2244 C. S. is in conflict with Article III, prohibiting special or local legislation, McGarvey v. Swan, 17 Wyo. 120. Legislative construction of the constitutional provision here involved is entitled to controlling weight in its interpretation, People v. Dayton, 55 N. Y. 367; People v. Ins. Co., 92 N. Y. 337; Slidell v. Grandjean, 111 U. S. 421; Swan v. U. S., 3 Wyo. 152. Courts will hesitate in declaring a statute void unless its invalidity is beyond reasonable doubt.

*Oscar O. Natwick* and *Marion A. Kline,* for defendants.

The statute and constitutional provisions involved in the eight questions reserved and certified to this court seem to be Chapter 35, L. 1925; Article I, Secs. 3 and 23; Article VI, Secs. 1 and 2; and Article XVI, Secs. 2 and 4 of the Constitution. Defendants contend that Section 2244 as amended in 1925 conflicts with the foregoing sections of the Constitution. Chapter 36, L. 1925 seems to be a companion measure of Chapter 35, differing only in that Chapter 36 is general in its terms and Chapter 35.

applies to school districts; Chapter 36 was 'construed in Simpkin v. City of Rock Springs, et al., 33 Wyo. 166 and adjudged to be void. A school district is a subdivision of a county and within the inhibition of Article XVI, Secs. 2 and 4 our statutes provide for the division of the counties into school districts, Chap. 32 L. 1913. City v. Water District (Me.) 63 Atl. 663. The qualifications of school electors are the same as in other elections. The intent of Article XVI of the Constitution is to cover the whole question of public indebtedness, including school districts. The term ''people'' as used in the sections of the Constitution referred to means electors of the state generally and is not restricted to property owners or tax payers. In Re State Debts, 37 Atl. 14; Koehler v. Hill (Ia.) 50 N. W. 609; State v. Board (Minn.) 197 N. W. 965; Klutts v. Jones (N. M.) 148 Pac. 494; Wendover v. Tobin (Tex.) 261 S. W. 434; Johnson v. County (N. D.) 113 N. W. 1071; Morris v. Powell (Ind.) 25 N. E. 221; Van Cleve v. Comm.'rs. (N. J.) 58 Atl. 571; State v. Garbroski (Ia.) 82 N. W. 959.

BLUME, Chief Justice.

This is an action, brought by plaintiffs, tax payers in the school district hereinafter mentioned, under the so-called declaratory-judgment act. They alleged in their petition that at a special district meeting in School District No. 9 of Platte County, Wyoming, held for the purpose of voting on the question of the issuance of bonds for the construction of school buildings in the district, the provisions of chapter 35 of the Session Laws of 1925, which amended section 2244, W. C. S. 1920, were ignored, on the theory that the chapter was unconstitutional and void, and that every person having the qualifications of an elector at a general state election, was permitted to vote upon the question, and that no elector voting thereon was in possession of, or was required to produce, a tax receipt, mentioned in the chapter aforesaid, or to make

the affidavit therein stated; that a majority of the electors of the school district present at the special school meeting and voting on the issuance of bonds, voted in favor thereof, and the defendants school trustees so determined and declared; that if the provisions of chapter 35, aforesaid, is not in conflict with the constitution of this state, then the action of the electors of the school district, at the special meeting aforesaid, was and is void; but that if, on the other hand, the statute aforesaid is unconstitutional, then the action of the electors at the meeting aforesaid was and is valid and binding upon the plaintiffs and all others similarly situated. Plaintiffs asked the court to determine whether or not chapter 35 aforesaid is valid or unconstitutional. The defendants appeared, admitted the allegations of the petition, and joined in the prayer that the court determine the validity and constitutionality of the chapter above mentioned. The court, thereupon, instead of complying with the prayer of the petition and the answer, certified to this court for its decision the question, among others, whether or not said chapter 35 is in violation of section 4 of article 16 or in violation of section 2 of article 6 of the Constitution of this state. Section 4 aforesaid reads as follows:

"No debt in excess of the taxes for the current year shall, in any manner, be created by any county or subdivision thereof, or any city, town or village, or any subdivision thereof in the state of Wyoming, unless the proposition to create such debt shall have been submitted to a vote of the people thereof and by them approved."

Section 2 of article 6 aforesaid reads as follows:

"Every citizen of the United States of the age of twenty-one years and upwards, who has resided in the state or territory one year and in the county wherein such residence is located sixty days next preceding any election, shall be entitled to vote at such election, except as herein otherwise provided."

1.   Chapter 35 of the Session Laws of 1925, is, as heretofore stated, an act purporting to amend section 2244, W. C. S. 1920, relating to the qualifications of electors for voting on special school tax appropriations or the bonding of school districts, and reads as follows:

"All school district elections shall be carried on as provided by law, and the qualifications of voters at such elections shall be the same as at any other election, and in addition thereto, such voter shall be in possession of a tax receipt, from the tax collector of the county in which such election is being held, showing that such voter is a taxpayer on real property in such school district; or shall make an affidavit upon oath before the school trustees before whom he or she offers to vote, that he or she is the owner, or is the husband or the wife of the owner of real property in such school district; provided, however, that the tax qualification mentioned in this section shall apply only to questions of special school tax appropriations of money and bonding such school district."

During the session of the Legislature in 1925, there was also adopted the companion measure of chapter 35 aforesaid, namely chapter 36 of the Session Laws of 1925, which prescribed the qualifications of electors in bond elections, and reads as follows, to-wit:

"No elector shall be eligible to vote for or against any bonds in any regular or special election unless he or she shall produce a tax receipt showing that he or she is a tax payer on real property or shall make an affidavit upon oath before the election board before which he or she offers to vote, that he or she is the owner, or is the husband or wife of the owner of real estate in the district, town, county, or state proposing to issue such bond."

The last named act might be broad enough to cover bond elections in school districts, but the legislature evidently did not think so, when it passed a special act relating to such districts.  In any event, the point does not

seem to be material and was not mentioned by counsel. Chapter 36 aforesaid was considered by this court in the case of Simpkin v. City of Rock Springs, 33 Wyo. 166, 237 Pac. 245. The question in that case was as to whether or not that chapter is in conflict with section 4 of article 16 of the Constitution of this state. We held that the term "people," as mentioned in this section, means electors who, in accordance with section 2 of article 6 of the Constitution, are entitled to vote at general elections— namely citizens of the United States of the age of twenty-one years and upwards who have resided in this state one year and in the county of their residence for sixty days next preceding the election; that chapter 36 aforesaid merely attempted to define the qualifications of electors in elections held under section 4 aforesaid, and that in so far as it attempted to do so, it is in contravention of the provisions of that section.

It is apparent, from a comparison of the provisions of chapters 35 and 36 aforesaid, that the qualifications of electors attempted to be prescribed in chapter 35 for bond elections in school districts, are substantially the same as the qualifications for electors attempted to be prescribed in chapter 36; and that if section 4 of article 16 of the Constitution applies to school districts the same as it does to towns and cities, the decision in this case must be in conformity with the decision in the Simpkin case. That, in fact, is admitted herein. It is, however, contended by the plaintiffs that school districts are not mentioned in this section; that such districts are not subdivisions of a county, and that, accordingly, the section has no application whatever to school districts. It is claimed that under section 1 of article 8 of the Constitution, which states that the legislature shall provide for the establishment and maintenance of a complete and uniform system of public instruction, the legislature has full and complete authority to determine the action of the

electors at any school election, as stated in 35 Cyc. 875.
And it is urged upon us that as early as 1905, by chapter
68 of the Session Laws of that year, the legislature pro-
vided a tax-qualification for electors voting on questions
relating to bonding a school district, and that the pro-
visions of that chapter have stood unchallenged for
twenty-two years, and should be accepted as an interpre-
tation that school districts were not intended to be em-
braced within the provisions of section 4 aforesaid. It is,
of course, true that a practical construction of a statute
for a long period of time will be given consideration by
the courts in order to determine as to whether or not it is
in conflict with any provisions of the constitution. But
there are several reasons why we cannot consider the
provisions of the act of 1905 as controlling herein, aside
from the practical construction given the Constitution by
the people as mentioned later on in this opinion. In the
first place, the effect of such want of challenge of that act
is offset by the fact that a property qualification was re-
quired of electors in school elections before the adoption
of our constitution (Sec. 3921, R. S. 1887), whereas im-
mediately after the adoption thereof (Sec. 179 c. 80, Sess.
L. 1890), the legislature provided that "the qualifications
of voters at such election shall be the same as at any other
election," and the latter provision remained in force for
the period of fifteen years. Again, we do not have the
provisions of chapter 68 of the Session Laws of 1905 be-
fore us for determination. The qualifications for electors
prescribed by chapter 35 of the Session Laws of 1925 are
much broader in scope than those prescribed by the
earlier act, and the validity of the latter would not neces-
sarily determine the validity of the former. But even
though the rule adopted in these two acts should be
thought to be identical in principle, the fact that the
earlier act stood unchallenged for the period of twenty-
two years must lose some of its force, if to give controlling

effect to it would bring about inharmonious decisions on the part of this court under the same constitutional provision. Thus, if section 4 of article 16 of the Constitution governs school districts as well as cities and towns, we should not, except, perhaps, for grave reasons, be asked to hold that the requirement of property qualifications in violation of that section is invalid in bond-elections in cities and towns, but valid in bond elections in school districts. We must, accordingly, determine as to whether or not school districts are contemplated and embraced in and governed by the provisions of section 4 aforesaid.

Article 16 of the Constitution deals mainly with the subject of the creation of indebtedness and the amount thereof on the part of the state itself and on the part of the governmental districts therein. By section 2, the state is forbidden, except in case of insurrection and to provide for the public defense, to create any debt in excess of the taxes for the current year, unless the people, by a vote, approve of such debt. The same rule is applied by section 4, as already noted, to every "county or subdivision thereof or any city, town or village or any subdivision thereof." And the framers of the Constitution went further. The people are not permitted to create an unlimited amount of indebtedness, though declaring their wish to do so by their solemn vote. By section 1, the total debt of the state is required to be limited, except to suppress insurrection or to provide for the public defense, to one per cent on the assessed value of the taxable property in the state. A similar rule is applied to counties by section 3, which forbids the people of a county to create, even by vote, a debt exceeding two per centum on the assessed value of taxable property in the county. And the same rule, with some exceptions, was applied by section 5 to every "city, town or village, or any subdivision thereof, or any subdivision of any county." These provisions clearly show the fear of the framers of

the Constitution that the state and the governmental districts might, unless limitations were made, be overburdened by debt and plainly evince the purpose to create a method by which the creation of a debt in excess of the taxes for the current year might be restricted, and the purpose not to leave an unlimited discretion even to the vote of the people. These limitations and restrictions were imposed upon the state itself and upon every governmental district therein and the people thereof, unless it be that school districts and the people thereof alone are excepted. School districts were not specifically mentioned in any of the sections of the Constitution above mentioned, as originally adopted, or in any other section relating to the same subject, and if, as contended, they are not a subdivision of a county within the meaning of these sections, no limitations whatever as to indebtedness were provided for them, and they were permitted, so far as the Constitution, as originally adopted, is concerned, to create an indebtedness of an unlimited amount and though exceeding many times the taxable value of the district. It would seem that, bearing in mind the purpose and intent of the limitations and restrictions above mentioned, it would require persuasive argument to show that school districts alone were intended to be excepted therefrom. And it would further seem that the argument that school district meetings are much like the New England town meetings, and are governed by the people themselves, who were fully trusted by the framers of our constitution, is of little force when we bear in mind the restrictions above mentioned imposed upon the people of the state and upon the people of the governmental districts specifically mentioned in sections 3, 4 and 5 of article 16 of the Constitution. Nor do we see the application of the argument made herein that the term "any election," as used in section 2 of article 6, does not apply to school meetings. We fail to see why that matters. We

held in the Simpkin case that the term "people" used in section 4 of article 16 of the Constitution is synonymous with electors qualified to vote at general elections, as stated in section 2 of article 6 of the Constitution. The point of importance in that case was, and in this case is, as to who is entitled and permitted to vote, not, so far as the questions under consideration are concerned, whether that vote is cast at a "meeting" or at an "election." The fact that the qualified voters under said section 4 are required to be voters at "any general election," is simply expressive of the qualification of voters necessary under said section 4, and has no bearing, so far as we can see, upon the question as to whether school districts are within the contemplation of said section.

There are many provisions in our statute which show at least a close association of school districts with counties—show the county as the unit, with the school districts a component part thereof. Thus section 2225, W. C. S. 1920, provides that whenever a school district is formed in any county, the county superintendent of schools in such county shall prepare a notice of the formation of such district. Section 2228, W. C. S. 1920, provides that the county superintendent of schools and the county commissioners shall constitute a board for laying off their county into convenient school districts, and shall divide the county into school districts. A number of other statutory provisions might be cited to show the same close relationship. That is true also in the Constitution. Thus section 8 of article 7, providing for the distribution of the income from school funds, says:

"Provision shall be made by general law for the equitable distribution of such income among the several counties according to the number of children of school age in each; which several counties shall in like manner distribute the proportion of said funds by them received respectively to the several school districts embraced therein."

So section 3 of article 14 limits the salary to be received by the county superintendent, thus recognizing the county as a unit for some school purposes at least.

But whatever doubt there might otherwise have been upon the point under discussion will disappear, we think, when we come to consider the amendment made to section 5 of article 16 of the Constitution. That section originally read as follows:

"No city, town or village, or any sub-division thereof, or any subdivision of any county of the state of Wyoming, shall, in any manner, create any indebtedness exceeding two per centum on the assessed value of the taxable property therein; provided, however, that any city, town or village may be authorized to create an additional indebtedness, not exceeding four per centum on the assessed value of the taxable property therein as shown by the last preceding general assessment, for the purpose of building sewerage therein. Debts contracted for supplying water to such city or town are excepted from the operation of this section."

School districts were not mentioned in this section any more than in section 4 of article 16 of the Constitution, and if school districts are not subdivisions of a county within the meaning of the latter section, neither are they within the meaning of the former, and the result would be, as heretofore stated, that—since there were no other provisions on the subject—school districts were not intended to be limited in the amount of the indebtedness which they wished to create. But we think, that the people have not so understood the Constitution, but have interpreted the section—and consequently also section 4 of the same article—to mean that the words "subdivision of any county" embraced and were intended to refer to school districts, and that school districts were, accordingly, limited to the creation of an indebtedness not exceeding two per centum of the assessed value of the taxable property.

From the time of the adoption of the Constitution, numerous bonds were issued by various school districts in the state, and we think it is historically true, that in no instance were school district bonds voted, issued and bought, which in amount exceeded the percentage just mentioned. And in order that school districts might not be so limited, the legislature in 1919 proposed an amendment to section 5 aforesaid, so that the section should read as follows:

"No city, town or village, or any sub-division thereof, or any sub-division of any county of the State of Wyoming, shall, in any manner, create any indebtedness exceeding 2 per centum on the assessed value of the taxable property therein; provided, however, that any city, town or village, may be authorized to create an additional indebtedness, not exceeding 4 per centum on the assessed value of the taxable property therein as shown by the last preceding general assessment, for the purpose of building sewerage therein; and provided further, that any school district may be authorized to create an additional indebtedness, not exceeding 4 per centum on the assessed value of the taxable property therein as shown by the last preceding general assessment, for the purpose of the erection or enlargement of school buildings therein; debts contracted for supplying water to such city or town are excepted from the operation of this section."

The proposed amendment was adopted by the people in 1920, and is now a part of the Constitution of this state. An examination thereof clearly discloses that the amendment was adopted solely upon the theory that a school district is a subdivision of a county; upon no other theory would the provisions as to such district have any meaning, for no specific mention thereof is made in any previous portion of the section, nor are they subdivisions of any city, town or village, and could, accordingly, have only been considered a subdivision of the county within the meaning of that section. We conclude, accordingly, that school districts are subdivisions of a county within

the meaning of section 4 of article 16 of the Constitution, and that the decision in this case must be in conformity with the Simpkin case.

· As we have heretofore said, section 4 above mentioned was intended as a restriction upon the power to vote indebtedness, and the framers of the Constitution deemed the method pointed out as an appropriate method, or at least as one of the appropriate methods to make the intended restriction effective. It is not for us to say that the requirement that all the qualified voters, whether taxpayers or not, should participate in the creation of such indebtedness, is not the best means to the intended end. It is one of the means to that end, and a means which cannot be ignored. We may assume, as was said in the Simpkin case, that the legislature may add to the restriction contained in the Constitution, but it cannot nullify those contained therein. Without now determining the point, we may assume that as an additional restriction, the legislature might, as a prerequisite to a bond issue, also require the consent of the majority or other proportion of the property owners or taxpayers, such consent to be expressed in a manner deemed proper by the legislature, as, for instance, by an election or meeting to be participated in only by such persons. But the legislature has made no such provision. Only one election or meeting is provided by law for the purpose of voting on any one issue of bonds, and it, accordingly, must necessarily be accepted and treated as the election or meeting contemplated in section 4 above mentioned. Chapter 35 of the Session Laws of 1925, too, clearly contemplates but one election or meeting on any one bond issue, and it accordingly, in so far as it relates to bond elections, must be held to simply define, and intend to define, the qualifications of the electors at the election or meeting contemplated in said section 4. And since those qualifications are contrary to those specified for electors in said section

4, in the light of section 2 of article 6 of the Constitution, the chapter mentioned must in that respect be held to be in violation of the provisions of said section 4.

To state our conclusion in different language, we think that chapter 35 aforesaid attempts, among other things, to define the qualifications of the electors who are entitled to vote at elections or meetings held in school districts pursuant to the provisions of section 4 of article 16 of our Constitution, for the purpose of voting bonds; that the electors as defined in section 2 of article 6 of the Constitution are entitled to vote at such elections or meetings and that since said chapter 35 prescribes different qualifications for such electors, it is in that respect null and void. This conclusion renders it unnecessary to determine whether the chapter mentioned is violative of any other constitutional provision.

POTTER, J., and KIMBALL, J., concur.