## 246

**UNION PROPERTIES INC., Plaintiff-Appellee v CLEVELAND (City), Defendant-Appellant.**

Ohio Appeals, 8th District, Cuyahoga County.

No. 19057. Decided April 12, 1943.

Lindemann & Ziegler, Cleveland, and Sylvester Marx, Cleveland, for plaintiff-appellee.

Thomas A. Burke Jr., Director of Law, Cleveland, A. A. Woldman, Cleveland, for defendant-appellant.

### OPINION

By MORGAN. PJ.

The petition in this case contains two causes of action. In the first cause of action plaintiff seeks to recover $1258.97 which it claims to have paid the defendant, The City of Cleveland, under duress. In the second cause of action it seeks to recover $149.95 which it claims the Sheriff of the County paid to the defendant under a mistake of fact but which amount should have been paid to the plaintiff.

It is the claim of the defendant, The City of Cleveland, that none of said payments were made under duress and that with the exception of payments amounting to $37.81, all payments were made more than one year prior to the filing of this action and were, therefore, barred by the provisions of §12075 GC. Furthermore, the

payments were made to discharge liens on properties owned by the plaintiff, for sewerage charges which were in the nature of a tax lien on the properties.

The case was tried on an agreed statement of facts, which disclosed that the plaintiff on foreclosure proceedings acquired approximately 150 separate parcels of land within the limits of the City of Cleveland; that the City of Cleveland had rendered certain sewerage services to previous owners of the mortgaged properties in each case, after the mortgage had become a lien but before the plaintiff had acquired title to the properties. The charge for sewerage services for any property was fixed by ordinance of the City of Cleveland at forty percent of the charge for the water used on the same property disregarding discounts.

The City of Cleveland certified all unpaid sewerage charges to the Auditor of Cuyahoga County in September, 1939, in the manner provided for in the said ordinance, and the County Auditor entered said sewerage charges on the general tax books of the county as liens against said properties.

It was agreed by the parties that the items set forth in the first cause of action amounting to $1258.97 were paid directly by the plaintiff to the Treasurer of the City of Cleveland, and that the items set forth in the second cause of action amounting to $149.95 were paid to the Treasurer of the City of Cleveland by the Sheriff of Cuyahoga County from the amounts realized on foreclosure sales.

The plaintiff contends that this case comes directly within the principle declared and applied in cases of **Western Reserve Steel Company v Village of Cuyahoga Heights, Ohio, 118 Oh St 544; Hohley v Summit Superior Company, 128 Oh St 257; H. O. L. C. v Tyson, et al 133 Oh St 184.**

These cases dealt with the right of cities operating water plants to collect water bills by securing liens on the properties for the use of which the water was furnished.

In **Steel Company v Village of Cuyahoga Heights, supra,** the Supreme Court said, referring to the collection of water bills, at page 548:

"The statutes cannot be construed to create a lien in favor of either the city or the village in the instant case."

The court stated that:

"The unpaid water rent was, insofar as this record discloses, a simple indebtedness of the Hunter Crucible Steel Company to the city."

In **Hohley v Summit Superior Co., supra,** the Supreme Court again held that:

"Neither **Sections 3957** and **3958 GC,** nor sections 41 and 1415 of the Code of 1919 of the City of Toledo, Ohio, create nor authorize

the creation of a lien upon real property for charges for water supply by such city to the premises of defendant in error."

In **H. O. L. C. v Tyson, supra,** the Supreme Court had before it the construction of §4361 GC which by its terms applies only to Villages. This section provides that in the case of Villages, the Board of Trustees of Public Affairs in managing the water works:

"May assess a water, light, power, gas or utility rent * * * upon all tenements and premises supplied with water * * * and when such rents are not paid, such trustees may certify the same over to the auditor of the county in which such village is located, to be placed on the duplicate and collected as other village taxes * * *."

In **Loan Corporation v Tyson,** while the charges for water rents and electricity assessed by the Village of Willard were certified to the county auditor for collection, they were not placed on the duplicate against any particular real estate. The Supreme Court in that case held that such an assessment and certification did not create a lien on any particular property. The court. however, pointed out that it was possible for the village, under §4361 GC to have obtained such a lien by following the proper procedure but that such a lien, when secured, would have been subsequent to a prior recorded mortgage.

It must be conceded that if the statutes controlling the collection of sewerage charges are of the same character as those providing for the collection of water bills and which were considered and applied in the above three cases by the Supreme Court, the defendant would have had no lien of any kind to secure the payment of sewerage charges on the properties acquired by the plaintiff.

The statutes, however. are not the same. They are different in vital respects. **Section 3891-1 GC** grants the rights to cities and villages operating a system of sewerage or sewage disposal plants, to

"establish just and equitable rates or charges of rents to be paid to such city or village for the use of such sewerage * * * by every person, firm or corporation whose premises are served by a connection to such sewerage * * * or disposal works."

Then follows in §3891-1 GC, the all important words, not found in any of the statutes controlling the collection of water bills:

"Such charges shall constitute a lien upon the property served by such connections and if not paid when due, shall be collected in the same manner as other city and village taxes."

Following, and in accordance with §3891-1 GC, the City of Cleveland enacted ordinance 558-a-38 which was in force when the

sewerage charges set forth in plaintiff's petition were contracted. In the "whereas" clauses of this ordinance the city set forth that it had ready for operation "a system of sewerage" and had constructed "intercepting sewers, pumping stations for its mains and disposal works for the convenience and treatment of such sewerage" and further that "it was necessary to levy and collect a sewerage service charge for such service upon the lots. lands and premises served by the sewerage connection with the sewerage system of the said city."

Following the "whereas" clauses, the ordinance provided as follows, (Section 3):

"That for the purposes stated in sections 1 and 7 hereof, there is hereby charged. levied and assessed upon each lot or parcel of land in the City of Cleveland on which a structure has been or may be erected, having connection with the sewerage system of Cleveland * * * a sewerage service charge payable as hereinafter provided and in an amount to be determined as follows * * *."

Then follow provisions as to the amounts of sewerage charges, times of payment, discounts, etc. In the event of the non-payment of the sewerage charges the ordinance provides that:

"The Director of Finance shall certify the same to the Auditor of Cuyahoga County, on or before the second Monday in September of each year, together with a pertinent description of the premises to which such sewerage service charge has been made, and the amount so certified shall be placed by the Auditor on the tax duplicate of Cuyahoga County to be collected as other taxes are collected * * *."

The agreed statement of facts further states:

"That the Auditor of Cuyahoga County did enter said charges on the general tax duplicate of Cuyahoga County as charges and liens against said properties."

The present case, therefore, is clearly differentiated from **Steel Company v Cuyahoga Heights et al, 118 Oh St 544; Hohley v Summit Superior Co. 128 Oh St 275** and **H. O. L. C. v Tyson et al, 133 Oh St 185,** on which the plaintiff is relying in this case, by the fact that §3891-1 GC controlling sewerage charges specifically provides that:

"Such charges shall constitute a lien upon the property served by such connection"

and the city ordinance enacted in pursuance to §3891-1 GC, requires that the certification of the unpaid sewerage charges to the County Auditor shall contain,

"a pertinent description of the premises to which such sewerage charges have been made"

and by the fact that the parties agree that the County Auditor in the case of each property involved in this case "did enter said charges on the general tax duplicate of Cuyahoga County as charges and liens against said properties"

As stated, it was held in 133 Oh St 184 that if all the steps necessary to create a lien had been taken, in that case such a lien would have been subsequent and subject to a prior recorded mortgage lien.

The Supreme Court came to this conclusion because of the provisions of §5671 GC which, in part, provides:

"Taxes charged on any tax duplicate other than those upon real estate specifically as such, shall be a lien on real property of the person charged therewith from the date of the filing of notice of such lien as provided by law."

The court considered that any lien acquired under the statutes controlling the furnishing of water by cities and villages would not be a lien "upon real estate specifically as such." The Supreme Court clearly could have come to no other conclusion because the water statutes contain no provision for such a lien.

But Section 3891-1 GC, as already stated, does provide that unpaid sewerage charges shall be "a lien upon the property served by such connection."

The council of the City of Cleveland was not exceeding its authority in providing that sewerage charges should be charged,

"upon each lot or parcel of land"

served by sewerage connections and the county auditor had the necessary authority to enter "said charges on the general tax books of Cuyahoga County as charges and liens against said properties."

It therefore follows that the sewerage charges in the present case were charged upon "real estate specifically as such" and therefore come within the exception provided for in §5671 GC.

We are confirmed in this opinion by the fact that Attorney Generals of Ohio have made the same distinction as made in this opinion between §3958 GC and §3891-1 GC.

In Volume 3, page 1788 (1929) A. G. O. Attorney General Bettman ruled that under the provisions of §3958 GC, "there is no authority for certification of delinquent water rentals to the county

auditor by a city." Attorney General Bricker approved and followed this ruling in Vol. 1, page 612 (1934) A. G. O.

In 1936 Attorney General Bricker construed §3891-1 GC relating to sewerage charges. He gave an opinion that sewerage rental charges came within the provisions of §5625-3 GC which provides that:

"All taxes levied on property shall be extended on the tax duplicate by the county auditor of the county in which the property is located."

He also ruled that sewerage rental charges are "taxes" under §2655 GC when entered by the county auditor on the general tax duplicate as charges and liens against definite properties.

**Section 2655 GC** provides:

"No person shall be permitted to pay less than the full amount of taxes charged and payable for all purposes on real estate except only when the collection of a particular tax is legally enjoined."

On this point the Attorney General said, in his opinion:

"Hence, it would seem that delinquent sewerage rental charges under §3891-1 GC, clearly come within the scope of the word 'taxes' as set forth in the first sentence of §2655 GC."

See A. G. O. (1936) Volume 3, pages 1503-1509.

By the agreed statement of facts all of the payments made by the plaintiff shown in both his first and second causes of action were payments of sewerage rental charges incurred by previous owners and which were levied on particular properties acquired by the plaintiff. All of these sewerage rental charges in pursuance to §5625-3 GC had been extended on the tax duplicate by the county auditor "as charges and liens against said properties" before the plaintiff acquired the properties. All of these charges thereby became liens against the properties and in our opinion were in the nature of taxes or assessments which having been paid by the plaintiff can not now be recovered by it.

The distinction made by the trustees between water bills on the one hand and sewerage rental charges on the other, is not an arbitrary distinction but has a sound basis in the nature of things. In the case of water, the city makes a sale of a commodity to a user which is in no essential respect different from a sale of electric power or other utility. Water is something that a property owner frequently provides for himself either by the digging of wells or by constructing cisterns. Frequently also it is possible for the property owner to purchase water from other sources than the city.

On the other hand, the providing of sewers and sewerage facilities is in the nature of a governmental function. It represents

a service which the property owner cannot supply for himself or purchase from another because by reason of its nature it can be furnished only by the municipality.

The expense of the maintenance of sewers or sewerage facilities has always been provided by taxation. The right of a city to levy a general tax to enable it to provide sewerage facilities for its inhabitants has never been questioned. The method provided by the city ordinance in the present case under statutory authority furnishes another and a more equitable method of levying the necessary taxes for the support of the sewerage system of the city, by making the properties directly benefited by the sewers responsible for their maintenance substantially in proportion to the use each property makes of the sewerage system.

All of the payments made by the plaintiff to the city, set forth in the first cause of action, with the exception of a small amount, were made more than one year before this action was begun. It is our opinion that all such payments are barred under §12075 GC.

The plaintiff also alleges that all of the payments made by it directly to the City of Cleveland were made under duress. It is our opinion that these payments were voluntary. It is not claimed that in the case of each of the 150 or more properties involved in this case a threat was made by the city to turn off the water if the sewerage rental charges should remain unpaid. The agreed statement of facts sets forth:

"That plaintiff would call Mr. E. F. Chapman, an officer of the plaintiff, who would testify that he believed the city would disconnect the water service for failure to pay the sewerage charge."

Even if this evidence were competent. it is not enough to prove that these payments were made under duress.

It is hardly necessary to cite authorities for the proposition that a voluntary payment of a lien. even if it were not collectible at law, cannot be recovered back. However, if we are correct in our holding that the liens for sewerage rental charges in this case were in the nature of taxes or assessments. it is not necessary to resort either to the statute of limitations or to the doctrine of voluntary payment to justify our decision.

For the reasons stated, the judgment of the court of common pleas is reversed and final judgment is entered for the defendant.

SKEEL. J.. concurs.
LIEGHLEY, J., dissents.