In the Matter of the West Highway Sanitary and Improvement District.

The Board of Trustees of the West Highway Sanitary and Improvement District,

Petitioner,

vs.

The State of Wyoming,

Answering Defendant,

and

R. W. Carr, Mrs. R. W. Carr, F. A. Woodruff, Dean Clutter, Lynn Reed, et al.,

Answering Defendants.

(No. 2785; October 29th, 1957; 317 Pac. (2d) 495.)

386

388

For the petitioner the cause was submitted upon the brief and also oral argument of Joseph F. Maier of Torrington, Wyoming.

For the answering defendants the cause was submitted upon the brief of George F. Guy, Attorney General, Cheyenne, Wyoming, and Hal E. Morris of Torrington, Wyoming, and oral argument by William A. Riner, Jr., Deputy Attorney General, Cheyenne, Wyoming, and Mr. Morris.

Heard before Blume, C.J., and Harnsberger and Parker, J.J.

390

OPINION

Mr. Chief Justice BLUME delivered the opinion of the court.

The legislature at a special session passed Chapter 17 of the Session Laws of Wyoming, 1950, concerning sanitary and improvement districts. The title of the Act is as follows:

"AN ACT authorizing the organization and operation of sanitary and improvement districts and the issuing of general obligation bonds for the borrowing of money and conferring the power of eminent domain."

Section 8 of the Act provides: "The board of trustees of any district organized under this act shall have power to provide for establishing, maintaining and constructing water mains, sewers and disposal plants, and disposing of drainage, waste and sewage of such district in a satisfactory manner."

Section 9 of the Act authorizes the district to issue general obligation bonds, not in excess of 10% of the

assessed valuation of the taxable property in the district and in lieu of the issuance of general obligation bonds the district may issue revenue bonds to pay all or part of the cost of improvement and pledge and hypothecate the revenues and earnings of the sewer system for the payment of such revenue bonds.

Section 17 of the Act provides for proceedings in the district court to examine, approve and confirm or disapprove and disaffirm the issuance of bonds. Other provisions of the Act will be discussed hereafter.

Pursuant to a petition, the West Highway Sanitary and Improvement District was organized on June 1, 1955. The district is in Goshen County, adjacent to the town of Torrington, Wyoming, and comprises a fairly compact area for approximately two miles extending westerly from the west corporate limits of the town of Torrington, Wyoming, and containing a total of approximately 181.7 acres. It may be called a suburban area. The taxable value of the district was $308,889. On October 11, 1955, the board of trustees of the district adopted a resolution to install a sanitary sewer, the plans for which had been approved and adopted by the board, and also resolving the issuance of direct obligation bonds in the sum of $30,800 and revenue bonds in the sum of $9,000. The resolution provided further that these bonds would be issued unless 40% of the electors of the district objected as mentioned in §§ 24 and 25 of the Act. At a meeting of the board held on November 9, 1955, it appeared that 40% of the electors in the district objected to the issuance of the bonds and the board of trustees accordingly entered an order calling a special election. On November 16, 1955, a special meeting of the board of trustees was held for the purpose of adopting the official ballot to be used in said special election. The

election was accordingly held on December 8, 1955. Two non property owners in the district voted in favor of the bonds and one non property owner voted against the bonds; 91 property owners voted in favor of the bonds, and 78 property owners voted against the issuance of the bonds. This was reported at a meeting of the board of trustees held on December 12, 1955. On April 10, 1956, the board of trustees of the district resolved to issue the bonds. On May 4, 1956, a petition was filed in the district court of Goshen County, Wyoming, asking the approval of the bonds by the court as provided by the statute.

It appears that the State of Wyoming was asked to buy the bonds of the district, so on June 20, 1956, the Attorney General of this State filed an answer alleging the illegality and invalidity of the bonds on various grounds. On June 27, 1956, Hal E. Morris, as attorney, filed an answer in the case on behalf of 27 electors in the district and alleging the facts substantially as alleged in the answer of the Attorney General. It was thereupon stipulated by the parties that the allegations of the petition were true; that certain objections were filed by the Attorney General and by electors in the district on constitutional grounds and asked the district court to submit constitutional questions to this court. The district court accordingly reserved to this court the constitutional questions which are as follows:

"1. Is a Sanitary and Improvement District, created under the provisions of Chapter 17, Session Laws of Wyoming, 1950, (also cited as Section 63-1201 to 63-1225, W.C.S.,1945, Supp.) a subdivision of a county and thus subject to the debt limitations contained in either Section 4 or 5, of Article 16, of the Constitution of Wyoming?

"2. Does Section 9 of the Act (Chapter 17, Session Laws of Wyoming, 1950), insofar as it purports to authorize the issuance and sale of Revenue Bonds by a Sanitary and Improvement District, contravene Section 24, Article 3, of the Constitution of Wyoming?

"3. Do Sections 8, 15 and 22 of the Act (Chapter 17, Session Laws of Wyoming, 1950), insofar as they purport to authorize Sanitary and Improvement Districts to construct and charge for water and water mains, contravene Section 24, Article 3 of the Constitution of Wyoming?

"4. Was the bond election held on December 8, 1955, by the West Highway Sanitary and Improvement District Board of Trustees, invalid by reason of the fact that the question submitted to the voters at said election, i.e.,

'Shall the Board of Trustees of the West Highway Sanitary and Improvement District be authorized to Issue, Sell and Dispose of General Obligation Bonds of the District in the Principal Sum of $30,800.00, Bearing Interest at a Rate not to Exceed Six per cent per annum and Revenue Bonds of the District in the Principal Sum of $9,000.00, Bearing Interest at a Rate not to Exceed Six per cent per annum, for the Purpose of Financing the Construction and Installation of Sanitary Sewer Mains within the District; said Bonds to Mature Serially in 20 years?'

was a submission of two propositions in one question, and thus contrary to law?

"5. Does Section 25 of the Act (Chapter 17 of the Session Laws of Wyoming, 1950), contravene Section 4 of Article 16 of the Constitution of Wyoming, by providing for a bond election to be held only in those cases where over forty per cent of the electors of a Sanitary and Improvement District file written objections to the issuance of bonds?

"6. Does the failure of the Act (Chapter 17 of the Session Laws of Wyoming, 1950) to provide for a spe-

cial registration for a special election, contravene Section 12 of Article 6 of the Constitution of Wyoming, by reason of the fact that it is contended that said section requires the prior registration as a voter of any person before being allowed to vote at any special or general election?

"7. Does the exemption of intangible property from taxation as set forth in Section 9 of the Act (Chapter 17 of the Session Laws of Wyoming, 1950), contravene the provisions of Section 27, Article 3, Constitution of Wyoming, by reason of the fact that said constitutional provision prohibits the passage of any local or special laws with reference to exempting property from taxation?

"8. Does the exemption of intangible property from taxation as set forth in Section 9 of the Act (Chapter 17 of the Session Laws of Wyoming, 1950), contravene the provisions of Section 28 of Article 1, Constitution of Wyoming, by reason of the fact that said constitutional provision requires that all taxation be equal and uniform?

"9. Do Section 22 and 23 of the Act (Chapter 17 of the Session Laws of Wyoming, 1950), providing for compulsory connection with the sewer system of a Sanitary and Improvement District, and providing for the collection of service charges by assessment 'against the premises served * * *', in effect amount to the levy of special assessments without notice, and thus contravene the provisions of Section 6, Article 1, of the Constitution of Wyoming?

"10. Is said Act (Chaper 17, Session Laws of Wyoming, 1950), so uncertain, indefinite, incomplete and invalid, as to be wholly void by reason of its failure to make provision for any method of nominating Trustees who desire to run for election within a Sanitary and Improvement District, and by further failing to provide when the elected trustees of such district shall take office?

"11. Does the authorization contained in Section 11 of the Act (Chapter 17, Session Laws of Wyoming, 1950), for the levy of not more than one mill on the dollar of the actual valuation within a Sanitary and Improvement District for 'general purposes' amount to a limitation on the amount that may be levied to pay bonded indebtedness under the general authorization for that purpose contained in Section 9 of the Act?

"12. Was the bond election of December 8, 1955, held by West Highway Sanitary and Improvement District invalid for the reason that the Act (Chapter 17, Session Laws of Wyoming, 1950), fails to make any provision for the procedure to be followed at a bond election thereunder, and because the provisions of Article 6, Chapter 31, Wyoming Complied Statutes, 1945, are inapplicable to such a district?

"13. If any one or more of the preceding questions have been answered in the affirmative as to the invalidity or unconstitutionality of any part of said Act (Chapter 17, Session Laws of Wyoming, 1950), is the whole of said Act invalid or unconstitutional because the said Act contains no separability clause?"

The first question submitted is the most important and we shall defer discussion thereof until after we have discussed the other questions.

In question two we are asked whether or not the title of Chapter 17, Session Laws of Wyoming, 1950, heretofore set out, is sufficient to include the issuance of revenue bonds. It is a general rule that the means, methods and instrumentalities for carrying a general purpose need not be expressed in the title of an act. 82 C.J.S. §§ 218, 220, pp. 362, 376. Fifth Decennial Digest, Statutes § 109.8. It has been held that if the title is otherwise sufficiently broad, the issuance of bonds need not be specifically mentioned in the title. In State ex rel. Webster Groves Sanitary Sewer Dist. v. Smith, 337 Mo. 855, 87 S.W.2d 147, 151, the court stated:

"Is the subject-matter of the act clearly expressed in the title? We think it is. The entire act relates to but one general subject, namely, the construction of sewers. Many details are contained in the act, such as the establishment of sewer districts and subdistricts, the making of plans and specifications, the holding of elections to vote on the issuance of bonds, providing for the levy of taxes to defray the expense of maintaining the corporation and paying the principal and interest on bonds, the condemnation of land, and the election and qualification of trustees to administer the affairs of the districts. All relate to the one subject. That subject is fully and fairly indexed in the title. As stated in State v. Ward, 328 Mo. 658, 665, 40 S.W. (2d) 1074, Loc. Cit. 1076: 'The title need not refer literally to all the details suggested by the general subject.' "

In Regents of the University of Michigan v. Pray, 264 Mich. 693, 251 N.W. 348, 349, the court said:
"While, as pointed out by appellants, the title does not refer to the issuing of drain bonds, none the less we think that provision therefor in a drain law is clearly and necessarily germane to the general provisions of the act having to do with 'the construction and maintenance of drains * * *.' "

Howsoever that may be another question remains. The title should not be misleading or give rise to surprise or deception. 82 C.J.S. § 212, pp. 348, 349. If it is specific it is not entitled to the liberal interpretation which would prevail otherwise. 82 C.J.S. §§ 218, 220, pp. 362, 375, 376. In this case the title is both general as well as specific. It is specific by reason of the fact that it provides for the issue of general obligations bonds. See Booth v. City of Owensboro, 275 Ky. 491, 122 S.W.2d 118. If the title had given authority only to issue revenue bonds, and the body of the act had made a provision for general obligation bonds, then, we think we would be required to hold that the title would be deceiving and hence in violation of Article 3,

§ 24, Constitution of Wyoming, which provides that: "No bill, except general appropriation bills and bills for the codification and general revision of the laws, shall be passed containing more than one subject, which shall be clearly expressed in its title * * *." The reverse is the case here. The title refers to general obligation bonds and not to revenue bonds. It is clearly misleading, but perhaps not injurious, and in view of our decision on the main point we think we may leave question two undecided.

Question Three. The title of Chapter 17, supra, merely relates to a sanitary and improvement district and the operation thereof. It does not appear that the district intends to maintain water mains. We are not sufficiently advised as to the facts and hence leave the questions unanswered except to say that insofar as water and water mains are incidental to and proper or necessary in connection with a sewer system, specific reference thereto in the title would not render the act unconstitutional.

Question Four. This question does not refer to any constitutional provision thought to be violated. We have held that a constitutional question submitted to us must refer to the constitutional provision thought to be violated; if that is not done, we need not answer the question. Taxpayers' League of Carbon County, Wyoming v. McPherson, 49 Wyo. 251, 54 P.2d 897, 106 A.L.R. 767; State ex rel. Voiles v. Johnson County High School, 43 Wyo. 494, 5 P.2d 255; Salt Creek Transp. Co. v. Public Service Commission, 37 Wyo. 488, 263 P. 621. If counsel in the case know of no constitutional provision which has been violated, this court ought not to be asked to make a special investigation to find out. The same situation exists concerning questions ten to thirteen.

398

Question Five. Section 24 of Chapter 17, supra, provides that unless 40% of the electors of the district object to the issuance of bonds of the district, the trustees may do so. Section 25 in substance states that if 40% of the electors object, an election must be held. Article 16, § 4, Constitution of Wyoming, provides in substance that the electors of a district must vote to create any debt in excess of taxes of the current year. Sections 24 and 25 mentioned above are in violation of the constitution insofar as they require that 40% of the electors must object before an election to issue bonds is necessary. To that extent we answer question five affirmatively. The matter is probably not of importance in this case since an election was in fact held.

Question Six. Article 6, § 12, Constitution of Wyoming, provides that no person shall be allowed to vote at a general or special election until he has registered, and that the legislature shall enact laws to carry this provision into effect. We need not determine whether that provision applies to elections held in an improvement district. No special provision in that matter was made in Chapter 17, supra. But the failure of the legislature to do so should not make an election invalid when in fact all legal voters have an opportunity to vote, as is provided by § 4, Chapter 17, supra. We accordingly answer question six by No.

Questions Seven and Eight. These relate to the provisions of §9, Chapter 17, supra, that a tax shall be levied annually on the taxable value of the property in the district except intangible property. It does not appear there is any intangible property in the district. The questions are academic, and so we leave them unanswered.

Question Nine. This question has given us no little trouble. Section 22, Chapter 17, supra, provides that the board of trustees may establish an initial charge for connecting with the sewer and establish just rates to be paid in connection with the water main, disposal plant and sewage system; that an action may be brought to recover these charges, or may be returned as other district taxes. Section 23 provides for compulsory connection with the sewer system.

It seems to be uniformly held that a statute for compulsory connection with a sewer system is valid, provided that, by reason of distance, etc., it is reasonable. Schmidt v. Village of Kimberly, 74 Idaho 48, 256 P.2d 515. 11 McQuillin Municipal Corporations, 3d Ed., p. 236. So we think such provision is valid.

It is, of course, fair that the parties compelled to connect with the sewer should have an opportunity to object to the charges that are to be made. The charges must be reasonable. 64 C.J.S. § 1805, p. 272. If an action is brought in court to recover these charges, the parties will have an opportunity to allege and prove that the charges fixed by the board of trustees are unreasonable, so in such case the due process clause of the constitution can hardly be said to be violated. See 64 C.J.S. § 1805, p. 271. But when it comes to collecting the charges in the same manner as taxes, that presents another question. We held in Laverents v. City of Cheyenne, 67 Wyo. 187, 217 P.2d 877, that these charges are not tax, properly speaking, and cited authorities to the effect that they are not special assessments. See also 64 C.J.S. § 1805, p. 273. But we did not have before us the question whether or not they can, by legislative authority, be made a lien. That they may be made a lien was held in Union Properties v. City of Cleveland, Ohio App., 49 N.E.2d 571, 142 Ohio

St. 358, 52 N.E.2d 335. Still nothing was said as to notice of the lien to be given to the parties interested. 14 McQuillin Municipal Corporations, 3d Ed., p. 242, states that by the weight of authority a statute must provide for notice if such notice is necessary. And the supreme court of Utah has held that due process of law requires notice and the opportunity to be heard prior to the imposition of a lien upon one's property. Bigler v. Greenwood, Utah, 254 P.2d 843. If we follow that case, and we see no reason why we should not, the creation of a tax lien, without notice as provided by § 22, Chapter 17, supra, is invalid. But there is no reason why the remainder of the section may not stand as valid, since the parts are separable. And if the holding in the Ohio case is valid, the district may have the statute amended by a future legislature. That is as far as we think we should go in this case in answering question nine..

Question Thirteen. While perhaps not necessary to be answered since it refers to no provision of the constitution thought to be violated, we think we should say that the various provisions of the legislative act in question are separable, and we do not think that merely because one or more provisions are invalid that therefore the whole act is invalid. See State ex rel. Wyckoff v. Ross, 31 Wyo. 500, 228 P. 636. Hence, the question is answered by No.

We shall now proceed to a discussion of the first question submitted to us. It is altogether too narrow in scope, as will be noticed from the discussion herein. Whether or not the sanitary district here involved is or is not a subdivision of the county, as mentioned in Article 16, § 5, of our constitution, would not, we think, determine the extent of its permitted indebtedness. However, the question has been argued from a broader

standpoint, and we shall discuss whether or not the indebtedness of the district is in any way limited by Article 16, § 5, of our constitution. That section, insofar as applicable here, is as follows:

"No city, town or village, or any subdivision thereof, or any subdivision of any county of the state of Wyoming, shall, in any manner, create any indebtedness exceeding 2 per centum on the assessed value of the taxable property therein; provided, however, that any city, town or village may be authorized to create an additional indebtedness, not exceeding 4 per centum on the assessed value of the taxable property therein as shown by the last preceding general assessment, for the purpose of building sewerage therein * * * debts contracted for supplying water to such city or town are excepted from the operation of this section."

It is the contention of counsel for the sanitary district that the district is not affected by any limitation of indebtedness as mentioned in Article 16, § 5, of our constitution—in other words, it is neither a city, town, village or subdivision thereof, nor a subdivision of a county. The trouble is that if we were to so hold, we should be confronted with some anomalous situations. A sanitary district, for instance, may include a whole city or town, or any part of it. 39 C.J.S. § 5, p. 815. State ex rel. Webster Groves Sanitary Sewer Dist. v. Smith, 337 Mo. 855, 87 S.W.2d 147. If then, the contention were correct that a sanitary district is not limited in its indebtedness at all, such district as embracing the whole of a city or town would have no limitation, whereas when considered as a city, town or village its indebtedness cannot exceed 2% of the taxable value of the property, plus 4% of such value for sewer purposes. This, then, would present an anomalous, if not absurd situation. See Cerajewski v. McVey, 225 Ind. 67, 72 N.E.2d 650. So if say nine-tenths or any other proportion of a city or town were organized as a

sewer district along with some area outside, then, upon the theory of counsel for the district, no constitutional limitation of indebtedness would exist, whereas under the constitution, the area in the city or town could not be burdened by an indebtedness of 2% of the taxable value of the property, plus 4% thereof for sewer purposes. So if a village were incorporated as a town, the limit of indebtedness could not exceed 2% of the taxable value of the property, plus 4% additional for sewers. If on the other hand, the village were organized as a sanitary or sewer district, there would not, according to the theory of counsel, be any constitutional limit at all. Furthermore, according to the theory of counsel, there would not be any constitutional limit to indebtedness of a hospital district, cemetery district, fire district or any other similar district if the construction of city, town, village and subdivision of a county were that put upon it by counsel for the district. We think that goes too far. As well stated in King v. Board of Regents, 65 Nev. 533, 200 P.2d 221, 226: "It is not essential that any given limitation of power be definitely expressed in the constitution." And see B. F. Sturtevant Co. v. O'Brien, 186 Wis. 10, 202 N.W. 324, 327. More than thirty years ago we had a similar question before us in the case of West v. School Dist. No. 9, Platte County, 37 Wyo. 36, 258 P. 583, 585, involving school districts under our constitution as originally enacted. We called attention to the limitation of indebtedness of states, counties and local districts and then stated in part:

"These provisions clearly show the fear of the framers of the constitution that the state and the governmental districts might, unless limitations were made, be overburdened by debt, and plainly evince the purpose to create a method by which the creation of a debt in excess of the taxes for the current year might be restricted, and the purpose not to leave an unlimited dis-

cretion even to the vote of the people. These limitations and restrictions were imposed upon the state itself and upon every governmental district therein and the people thereof, unless it be that school districts and the people thereof alone are excepted. School districts were not specifically mentioned in any of the sections of the Constitution above mentioned, as originally adopted, or in any other section relating to the same subject, and if, as contended, they are not a subdivision of a county within the meaning of these sections, no limitations whatever as to indebtedness were provided for them, and they were permitted, so far as the Constitution as originally adopted is concerned, to create an indebtedness of an unlimited amount and though exceeding many times the taxable value of the district. It would seem that, bearing in mind the purpose and intent of the limitations and restrictions above mentioned, it would require persuasive argument to show that school districts alone were intended to be excepted therefrom."

We accordingly held that school districts were subdivisions of a county.

We do not have in this state, and did not have at the time the constitution was adopted, governmental subdivisions of a county such as they have in many older states where they have townships with limited governmental authority. The term subdivision of a county contained in Article 16, § 5, of our constitution would then have no meaning at all unless it has reference to districts such as mentioned or similar districts. Some meaning must be attached to it. We presume that the framers of the constitution intended to do so. It is stated in 39 C.J.S. § 5, p. 814 and 29 C.J. 244, that a sanitary district is a civil or political subdivision of the state organized to secure, preserve and promote the public health. Such districts, and other districts above mentioned, are necessarily located in some county, or possibly counties, in the state, and we see no

particular reason, in view of the fact that some limitation of indebtedness was probably intended, why they may not be regarded as political subdivisions of the state as well as of the county in contemplation of the constitution, unless, of course, they constitute a city, town or village, the limitation of indebtedness of which is specifically provided. In Article 6, § 26(b), of the Constitution of Missouri, it is provided that "Any county, city, incorporated town or village, school district or other political corporation or subdivision of the state * * * may become indebted in an amount not to exceed five per cent of the value of taxable tangible property." In State ex rel. Melrose Sewer Dist. v. Smith, 343 Mo. 207, 120 S.W.2d 1102, 1104, speaking of a sewer district the court said: "The district of course cannot incur indebtedness exceeding such (constitutional) limitation." It is true that in this state the framers of our constitution used the inapt phrase "subdivision of the county," but we think they would be surprised, if living, if we should hold that the result in this case should be different from that in the Missouri case above. We might further mention the fact that Article 16, § 5, of our constitution, specifically provides that there is no constitutional limit of indebtedness for the purpose of supplying water to a city or town. The enumeration of but one exemption seems to imply that there is no exemption in any other case.

Counsel for the district argues that a sanitary or sewer district is similar to an irrigation district and hence is not subject to the limitations of indebtedness of Article 16, § 5, of our constitution. The case of Armstrong v. Sewer Improvement Dist. No. 1, 201 Okla. 531, 199 P.2d 1012, 1014, 207 P.2d 917, so holds. The court stated:

"A careful study of the Act convinces us that the district is not such a political subdivision or corporation

as those terms are used in section 26, and that therefore the district does not fall within the class affected by that section (which limited the indebtedness to 5 percent). * * * But a reading of the Act herein involved clearly discloses that the sewer improvement districts therein provided for are not organized for political or governmental purposes and do not possess political or governmental powers other than those necessary to carry out the specific purposes for which they are created. They are in no sense additions to or agencies in aid of the general government of the state, or in the aid of any governmental agencies or functions, but are purely for the purpose of promoting the welfare and benefit of the inhabitants of that particular district. They are in the same class in that respect as the levees, drains, ditches and irrigation systems, which by Art. 16, section 3 of the Constitution, the Legislature is authorized to provide. * * *."

That case seems somewhat inconsistent with an earlier decision of the Oklahoma court in Sharp v. Hall, 198 Okla. 678, 181 P.2d 972, 974, though a case somewhat different, in which the court held that sewers are public utilities and stated that: "In the operation of a public utility, the municipality engages in business as a private corporation, but retains its cloak of governmental authority and is bound by the limitations provided by the constitutions." It but states the general rule mentioned in 15 McQuillin Municipal Corporations, 3d Ed., p. 306, that: "Unless exempted therefrom, debts incurred for public utilities are within the scope of debt-limitation provisions." That there is a distinction between an irrigation district and a sewer district is clear. The former is organized purely for an economic reason, namely, to increase the fertility of the soil. A sewer district involves the health of the community. The Missouri court differs entirely from the case of Armstrong v. Sewer Improvement Dist. No. 1, supra. In State ex rel. Becker v. Wellston Sew-

er Dist., 332 Mo. 547, 58 S.W.2d 988,991, the court referring to sewer districts stated:

"That they are governmental agencies created through an exercise of the police power is well established. * * * These have been classified as 'public corporations and governmental agencies exercising exclusively governmental functions.'"

To the same effect is Union Properties v. City of Cleveland, Ohio App., 49 N.E.2d 571, 142 Ohio St. 358, 52 N.E.2d 335. Moreover, the Armstrong case cannot be held applicable in this state in view of the specific limitation of indebtedness for sewer purposes stated in Article 16, § 5, of our constitution. Article 10, § 26, of the Oklahoma constitution contains no such specific provision.

The constitution fixes the maximum amount of indebtedness that may be incurred for sewer purposes and enumerates the communities that are permitted to incur such indebtedness. Article 16, § 5, Constitution of Wyoming, provides that: "* * * provided, however, that any city, town or village may be authorized to create an additional indebtedness, not exceeding 4 per centum on the assessed value of the taxable property therein as shown by the last preceding general assessment, for the purpose of building sewerage therein." Here is an enumeration of the communities that may do so. Hence, it is clear that we must apply the rule of Expressio unius est exclusio alterius. Accordingly, "where a statute enumerates the subjects or things on which it is to operate, or the persons affected, or forbids certain things, it is to be construed as excluding from its effect all those not expressly mentioned." 82 C.J.S. § 333, p. 666. The rule is applicable in construing constitutional provisions. 16 C.J.S. § 15, p. 71. Hence, it is clear that no communities except cities,

towns and villages are entitled to incur the 4% additional indebtedness mentioned. It would be strange indeed if the largest and the smallest of comparatively compact communities are limited, as the constitution provides, that sewer districts not located therein should not be bound by any constitutional limitation of indebtedness at all. Hence, the main problem confronting this court is whether or not the sewer or sanitary district herein may be said to come fairly within the terms of "cities, towns and villages."

The terms last mentioned—cities, towns and villages—comprise the largest and the smallest of all fairly compact communities known to us in history, and in view of the fact that sewers are desirable for the health of communities, and this must have been known to the framers of our constitution, we must construe these terms liberally and in the light of such desirability. In 92 C.J.S. p. 1011, are found definitions of a village. Thus it is said that a village is an aggregation of houses and inhabitants more or less compact. That fits the sanitary district here involved after its boundaries were fixed. Moreover the terms cities, towns and villages embrace and are substantially synonymous with the term municipalities. The supreme court of Illinois has uniformly held that a sanitary district is a municipal corporation. 29 C.J. p. 244; 39 C.J.S. § 5, p. 814, note 54. That, as we have seen, is true also in Missouri. The supreme judicial court of Maine has defined a water district as a municipal corporation. In City of Augusta v. Augusta Water Dist., 101 Me. 148, 63 A. 663, 664, the court stated:

"A body politic and corporate, created for the sole purpose of performing one or more municipal functions, is a quasi municipal corporation, and as we have said, in common interpretation, should be deemed a municipal corporation. The phrase 'municipal corporation' is now generic, and, we think, it should be held to in-

clude municipal corporations proper, and such quasi municipal corporations as cities, towns and school districts, water, fire and other municipal districts."

Thus it would seem that though the sanitary district here involved may not be strictly speaking a village or other municipal corporation, yet broadly speaking it can fairly be said to be within the contemplation of Article 16, § 5, of our constitution, with a limitation of indebtedness of 2% of the taxable value of the property therein, plus not to exceed 4% of the value of such taxable property for sewer purposes. As stated in B. F. Sturtevant Co. v. O'Brien, 186 Wis. 10, 202 N.W. 324, 327: "The language of a Constitution is not to be limited to the precise things considered therein, but it embraces other things as they come into being of the same general nature or class." See also 16 C.J.S. § 14, p. 68; Pellish Bros. v. Cooper, 47 Wyo. 480, 38 P.2d 607, and cases cited. Hence we must answer that insofar as Chapter 17, § 9, Session Laws of Wyoming, 1950, permits an indebtedness in excess thereof, namely, to the extent of 10% of the taxable value of the district, it is in violation of Article 16, § 5, Constitution of Wyoming.

From what has been said, it follows, of course, that the indebtedness of the sanitary district is limited by Article 16, § 4, of our constitution which provides that no debt in excess of the taxes for the current year shall be created by any county or subdivision thereof or any city, town or village, or any subdivision thereof unless approved by the people at an election.

We should add this: It is quite apparent from the foregoing discussion that Article 16, § 5, of our constitution is not what it should be. The legislature should make a careful study of the needs of the State and the various communities and districts therein.

formulate an amendment with provisions that are reasonable and which the people would probably approve, and submit such an amendment to the people for approval.